JOHN S. MAKAR ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, JS.

Argued January 2—decided March 8, 1963

*W. Bradley Morehouse,* with whom, on the brief, was *John R. Curran,* for the appellant (defendant Dardani).

*Daniel E. Brennan, Jr.,* with whom, on the brief, was *James J. A. Daly,* for the appellees (plaintiffs).

BALDWIN, C. J. The defendant Frank Dardani applied to the defendant zoning board of appeals of the town of Fairfield for a variance of the zoning regulations relating to the use of land which he owns on Black Rock Turnpike between Candlewood Road and Whitewood Drive, all public highways in Fairfield. He proposes to erect on this land a one-story brick building, 7720 square feet in floor area, to house professional offices and to provide off-street parking for 43 automobiles. The land for which the variance is sought has a frontage of 300 feet on Black Rock Turnpike, 133 feet on Candlewood Road and 90 feet on Whitewood Drive. It is presently in a residence A zone, where a single-family residential use only is permitted under the regulations. Fairfield Zoning Regs. § 3, div. 1 (1960). The use for which the variance is asked is permissible in a business zone. Id. § 4.

Dardani claims, as the reason for a variance, that the property is "entirely unsuitable for residential purposes." The basis for the action of the board in allowing the variance was stated in the minutes of its executive session to be "[h]ardship . . . in that the land is unsuitable for residential purposes." The board is vested with all the powers conferred upon it under the General Statutes. 25 Spec. Laws 719; Fairfield Zoning Regs. § 14 (1960). Among these powers is the power to vary the application of the zoning regulations "where, owing to conditions especially affecting . . . [the land for which the relief is sought] but not affecting generally the district in which it is situated, a literal enforcement of . . . [the] regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured." General Stat-

utes § 8-6 (3). We have said many times that this power must be exercised sparingly and only in exceptional and unusual instances. *Wil-Nor-Corporation* v. *Zoning Board of Appeals,* 146 Conn. 27, 30, 147 A.2d 197; *Mabank Corporation* v. *Board of Zoning Appeals,* 143 Conn. 132, 136, 120 A.2d 149.

The record of the board returned to the trial court discloses the following salient facts: Dardani's property is located on what we will call, in the interests of simplification, the easterly side of Black Rock Turnpike between Candlewood Road and Whitewood Drive. The southerly end of his property is located in the northeasterly corner of the intersection of Black Rock Turnpike and Whitewood Drive. Tunxis Hill Cutoff enters this intersection from a southeasterly direction, forming a sharp angle with Black Rock Turnpike which, south of the intersection, is the more westerly of these two highways. These highways are very heavily traveled. Dardani's land is surrounded on the north and east by land zoned and devoted to residential uses. The land to the west, directly across Black Rock Turnpike, and for a long block northerly along the turnpike is also zoned for residential use. A mile easterly and southerly, down the Tunxis Hill Cutoff, there is a large business district. The land in the angle formed by the junction of Black Rock Turnpike and Tunxis Hill Cutoff as well as the land on the westerly side of Black Rock Turnpike as it approaches the intersection from the south is also zoned for business uses. These latter lands are diagonally across the intersection southwesterly from the Dardani property. On them, there are fourteen commercial establishments, one of which is a gasoline station. The population in the general area is growing rapidly. The traffic

on Black Rock Turnpike and Tunxis Hill Cutoff is increasing in volume. The large business district one mile east along Tunxis Hill Cutoff has become the second largest business district in Fairfield. There can be no doubt that the development of the entire area has made the Dardani property less desirable for residential uses than it was formerly.

The crucial question is whether the evidence before the board supports the granting of a variance. The board's finding that the literal enforcement of the regulations would result in a hardship appears to rest primarily, if not entirely, on the testimony of a real estate dealer produced by Dardani. The dealer testified that it would not be economically feasible to build dwelling houses on Dardani's land, and that the land is salable but at a price substantially less than Dardani paid for it. Dardani concedes that it is physically possible to erect on this land two single-family dwelling houses which would conform to the presently applicable zoning regulations. Although he purchased the property as long ago as 1954 or 1955, it does not appear that he has ever contemplated developing it for anything but uses which are not in conformity with the regulations. He can either sell it or build dwelling houses on it, but in either event he will be unable to realize the full benefit of his investment in the land. The hardship by reason of the unsuitability of the property for residential purposes is, therefore, a financial hardship.

Ordinarily, mere financial loss does not constitute a hardship warranting the granting of a variance. *Forbes* v. *Zoning Board of Appeals*, 146 Conn. 547, 550, 153 A.2d 458; *Spalding* v. *Board of Zoning Appeals*, 144 Conn. 719, 721, 137 A.2d 755; *Lindy's Restaurant, Inc.* v. *Zoning Board of Appeals*, 143

Conn. 620, 623, 124 A.2d 918; *Libby* v. *Board of Zoning Appeals,* 143 Conn. 46, 51, 118 A.2d 894, and cases collected in the footnote. "Situations will arise, however, where the application of zoning to a particular piece of property practically destroys or greatly decreases its value for any permitted use to which it can reasonably be put, and where the application of the ordinance bears so little relationship to the purposes of zoning that, as to that property, the regulation is, in effect, confiscatory or arbitrary." *Libby* v. *Board of Zoning Appeals,* supra. In that case, a variance was granted to allow a thirteen-room single-family house in a single-family residential zone to be made into a two-family house. The applicant, a physician who had maintained his office and residence in the house before he moved his office to another town, was able to show that his attempts for two years to sell the house as a single-family house had been futile and that the proposed alteration, which would permit a two-family residential occupancy, would be confined to the interior of the house and would have no effect on the neighboring properties. In the *Libby* case, adherence to the letter of the zoning regulations would have caused a financial loss so great as to amount to a confiscation of the property. In the instant case, the financial loss is unfortunate but far from confiscatory. See ibid.; *Culinary Institute of America, Inc.* v. *Board of Zoning Appeals,* 143 Conn. 257, 262, 121 A.2d 637. Furthermore, the use which Dardani proposes would have a serious detrimental effect on the surrounding residential properties.

A hardship which under General Statutes § 8-6 (3) would permit a zoning board of appeals to vary the application of zoning regulations must

differ in kind from the hardship imposed on properties in general by the regulations. *Murphy, Inc.* v. *Board of Zoning Appeals,* 147 Conn. 358, 360, 161 A.2d 185; *Talmadge* v. *Board of Zoning Appeals,* 141 Conn. 639, 643, 109 A.2d 253; *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 600, 108 A.2d 899. The conditions created by the operation of the regulations must be peculiarly oppressive to the applicant's property. *Murphy, Inc.* v. *Board of Zoning Appeals,* supra. The record of the board here does not show that the population growth, the increase in traffic and the development of nearby commercial uses have affected Dardani's property in any way different from the way in which they have affected other residential properties in the neighborhood, especially the properties along Black Rock Turnpike and Tunxis Hill Cutoff. The trial court did not err in sustaining the appeal.

There is no error.

In this opinion the other judges concurred.