## AKILAH BITTLE *v.* COMMISSIONER
## OF SOCIAL SERVICES
## (SC 15973)

Callahan, C. J., and Berdon, Norcott, Katz and McDonald, Js.

Argued March 18—officially released July 20, 1999

*Alison Morantz*, certified legal intern, with whom
were *Kathleen A. Sullivan*, supervising attorney, and,

on the brief, *Robert A. Solomon*, for the appellant (plaintiff).

*Karen H. Fritzinger*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Richard J. Lynch*, assistant attorney general, for the appellee (defendant).

*Opinion*

NORCOTT, J. The dispositive issue in this certified appeal is whether service of process pursuant to General Statutes § 4-183 (c)[1] is perfected upon depositing in the mail, certified mail, return receipt requested, a copy of the appeal papers, addressed to the proper agency or the attorney general within forty-five days of the mailing of the agency's decision. The plaintiff, Akilah Bittle, appealed to the trial court from the decision of the defendant, the commissioner of the department of social services (department), denying her application for an emergency security deposit. The plaintiff, using certified mail, return receipt requested, mailed the appeal documents forty-four days after the mailing of the department's decision. The trial court dismissed the

[1] General Statutes § 4-183 (c) provides: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of Hartford. Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions."

appeal, sua sponte, for lack of subject matter jurisdiction because the documents had not been received by the department until forty-eight days after the mailing of the decision by the department.

Thereafter, the plaintiff appealed to the Appellate Court, which affirmed the trial court's decision. See *Bittle* v. *Commissioner of Social Services*, 48 Conn. App. 711, 712–13, 711 A.2d 1198 (1998). Specifically, the Appellate Court concluded that service under § 4-183 (c) is not completed until the appeal papers are in the actual possession of the administrative agency or the attorney general, whether service is by certified mail or in-hand service. Id., 717. We disagree and, accordingly, we reverse the judgment of the Appellate Court.

I

The facts are undisputed and are aptly set forth in the opinion of the Appellate Court. "The plaintiff applied to the department for an emergency security deposit so that she might rent a new residence. The department informed her that before she could be eligible for an emergency security deposit she would have to obtain a judgment of eviction against herself. Shortly thereafter, the plaintiff obtained such a judgment. When she advised the department that she had obtained the judgment of eviction, the department informed her that she had never been qualified to receive an emergency security deposit.

"The department issued its denial of the plaintiff's request for an emergency security deposit on August 29, 1995. On October 12, 1995, forty-four days after the issuance of the judgment, the plaintiff attempted to appeal from the denial of her request for an emergency security deposit. This was accomplished by depositing the appeal documents in the United States mail by certified mail, return receipt requested, addressed to the [department] and to the office of the attorney general.

The attorney general's office and the [department] received the appeal documents on October 16, 1995, forty-eight days after notice of the denial of the requested emergency security deposit was mailed to the plaintiff. The trial court found that service was not completed until it was received by the defendant and, therefore, that the plaintiff had not satisfied the requirement of § 4-183 (c), depriving the court of subject matter jurisdiction." Id., 712–13.

Accordingly, the Appellate Court affirmed the judgment of the trial court. We granted the plaintiff's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that service of process pursuant to General Statutes § 4-183 (c) is not perfected upon depositing in the mail, certified mail, return receipt requested, a copy of the appeal papers, addressed to the proper agency or the attorney general within forty-five days of the agency decision?" *Bittle* v. *Commissioner of Social Services*, 245 Conn. 922, 717 A.2d 237 (1998).

## II

This appeal concerns, in essence, the statutory construction of § 4-183 (c) (1). The plaintiff argues that service of process of appeal papers pursuant to § 4-183 (c) (1) is perfected when the appeal papers are deposited in the mail within the time limits set, and by the specific mail services prescribed by that statute. Specifically, the plaintiff claims that the Appellate Court's conclusion that service is not effective upon mailing, pursuant to § 4-183 (c) (1), conflicts with the plain language of the statute and undermines the legislative intent to enhance rather than constrain the rights of an appellant under the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The department counters that service is not perfected

until the appeal papers physically are received by the agency. We agree with the plaintiff.

"Statutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). "In interpreting statutes, we are guided by well established tenets of statutory construction. [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *Hunnihan* v. *Mattatuck Mfg. Co.*, 243 Conn. 438, 444, 705 A.2d 1012 (1997). Having considered these factors, we conclude that a party appealing from an administrative decision perfects service of process on the agency pursuant to § 4-183 (c) (1) upon depositing the appeal documents in the mail.

"It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666, 560 A.2d 975 (1989)." *Vaillancourt* v. *New Britain Machine/Litton*, 224 Conn. 382, 391, 618 A.2d 1340 (1993). We, therefore, begin our analysis with the relevant language in § 4-183 (c).

The department claims that the language that must be given full effect is the first sentence in § 4-183 (c), which provides in relevant part: "[A] person appealing

as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office . . . ." According to the department, the phrases "on the agency," and "at its office" demonstrate that service can be made only if it physically is received by the agency. This reading of the statute is misdirected. The phrases on which the department has focused merely provide upon whom, and where, the service must be made. The operative part of the statute is the verb "serve." The meaning of "serve," therefore, is the focus of our analysis.

Methods of effecting service of appeal papers on agencies are set forth in § 4-183 (c), which provides in relevant part: "Service of the appeal shall be *made by (1) United States mail*, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions." (Emphasis added.) Prior to 1988, service of appeal papers could "be *made by the appellant mailing* a copy of the petition . . . to the office of the commissioner of the agency or to the office of the attorney general in Hartford" pursuant to General Statutes (Rev. to 1987) § 4-183 (b).[2] (Emphasis added.) The apparent linguistic differences between the current and the previous statutes are the results of the amendments

---

[2] General Statutes (Rev. to 1987) § 4-183 (b) provides in relevant part: "Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides . . . within forty-five days after mailing of the notice of the final decision of the agency . . . . Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

made to the UAPA by No. 88-317, § 23, of the 1988 Public Acts (P.A. 88-317). Although the current language of § 4-183 (c) provides that "[s]ervice of the appeal shall be made by . . . United States mail," instead of "service upon an agency may be made by . . . mailing," as was provided by General Statutes (Rev. to 1987) § 4-183 (b), the legislative history of P.A. 88-317 does not indicate that the linguistic changes in the statute were meant to incorporate material and consequential changes in the application of the previous revision of the statute. The operative language in General Statutes (Rev. to 1987) § 4-183 (b) that is material for the purposes of resolving the issue in this appeal is the phrase "made by . . . mailing . . . ." A plain reading of that phrase conveys that service is completed when the appeal is mailed.[3] The history of the statutory development of § 4-183 (c) also supports the conclusion that such an interpretation of the phrase "made by . . . United States mail," as it appears in § 4-183 (c), furthers the legislature's intent in providing a simple and efficient method of effectuating service of appeal papers by mail.

More than two and one-half decades ago, the statutory method for service of process of appeals from

---

[3] The department concedes that our interpretation of General Statutes (Rev. to 1987) § 4-183 (b) is a plausible reading, but argues that because, through P.A. 88-317, the language of the statute evolved from "service upon an agency may be made by the appellant mailing a copy of the petition . . . to the office of the commissioner of the agency"; General Statutes (Rev. to 1987) § 4-183 (b); to "[appellant] . . . shall serve . . . the appeal on the agency . . . at its office"; General Statutes § 4-183 (c); the legislature intended that service be perfected when an agency has received the appeal papers. The legislative history with respect to this point essentially traces the language of the statute, as amended, and it does not, therefore, add any new evidence for our consideration: "Service of the appeal on the agency and parties may be made either by mail or by sheriff within forty-five days of the mailing or personal delivery of the final decision." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 385. We have not discovered, and the department has not provided this court with, any evidence in support of the claim that the changing of the word "to," to the word "at,"

administrative agencies began to evolve. This evolution is reflected by several statutory amendments made to the UAPA since 1971. Our review of the legislative records related to these amendments shows that each amendment was motivated by public policies that were intended to enhance the rights of the public in regard to the service of process of appeals on the agencies specifically, and the process of prosecuting appeals from, and other matters before, the state agencies generally. See *Tolly* v. *Dept. of Human Services*, 225 Conn. 13, 29, 621 A.2d 719 (1993). In particular, this historical development shows that the option of making service of process by mail was a step taken by the legislature for the benefit of the public to simplify procedures for appealing administrative decisions.

Prior to 1977, the process for taking appeals from a decision of an administrative agency varied among agencies. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., p. 396. In some instances, service of process by certified mail was available, and in others, personal service by a sheriff was required. Id. In 1977, the legislature passed No. 77-603 of 1977 Public Acts (P.A. 77-603), by which it uniformly required that service of process of appeals from agencies be made by a sheriff. See *Tolly* v. *Dept. of Human Services*, supra, 225 Conn. 22. By making the procedure for service of process uniform throughout the state, the legislature simplified the appellate procedures for appealing agency decisions. That provision of P.A. 77-603, which addressed the method of service of appeals from administrative agency decisions, was then codified at General Statutes (Rev. to 1979) § 4-183 (b). See P.A. 77-603, § 1 (b).[4]

was intended to make the receipt, rather than the mailing, of appeal documents the event that perfects service under the statute.

[4] Public Act 77-603, § 1 (b), which is codified at General Statutes (Rev. to 1979) § 4-183 (b), provides: "Proceedings for such appeal shall be instituted by filing a petition in the court of common pleas or on or after July 1, 1978, to the superior court for Hartford county or for the county or judicial

In 1979, the legislature passed No. 79-163 of 1979 Public Acts (P.A. 79-163), by which it amended General Statutes (Rev. to 1979) § 4-183 (b) to provide the alternative method of using the mail for effectuating service of appeal papers upon agencies.[5] This amendment was a further step in devising a more cost-effective, less cumbersome and, in a word, simpler method for making service upon agencies.[6]

district wherein the aggrieved person resides or if such person is not a resident of this state to the court for Hartford county within *thirty* days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within *thirty* days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record *in the same manner as process is served in civil actions.*" (Emphasis added.)

[5] Public Act 79-163, which is codified at General Statutes (Rev. to 1981) § 4-183 (b), provides: "Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within *forty-five* days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within *forty-five* days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record *within thirty days after mailing of such notice or, if a rehearing is requested, thirty days after the decision thereon, except that service upon an agency may be made by mailing a copy of the petition by registered or certified mail, postage prepaid, to the office of the commissioner of the agency or to the office of the attorney general in Hartford.*" (Emphasis added.)

[6] The relevant portions of the legislative records provide: "If desired, this bill can also be used to solve two other closely related problems concerning the service of process in administrative appeals. The old [General Statutes] § 17-2b permitted service of process on the Commissioner of Social Services by registered or certified mail. P.A. 77-603 requires service by sheriff in all cases. There is no good reason to require the more cumbersome use of sheriff's service upon the agency. In addition, this can generate a cost-saving for the state, since appeals by indigents require the state to pay the sheriff's fee." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., pp. 521–22, remarks of Attorney Raphael L. Podolsky on behalf of the legal services training and advocacy project.

The remarks of Senator Alfred Santaniello, Jr., regarding the method of service of appeals are also pertinent: "Briefly Mr. President, it changes the appeal period from [thirty] days to [forty-five] days and changes the mode of service as presently it is required under the statute that is the same as civil and it just *simplifies* both areas of service and extends the time period from [thirty] to [forty-five] days." (Emphasis added.) 22 S. Proc., Pt. 7, 1979 Sess., p. 2231.

In 1983, in *Board of Education* v. *State Board of Education*, 38 Conn. Sup. 712, 716, 461 A.2d 977 (1983), the Appellate Session of the Superior Court held that "[t]he purpose of [P.A. 79-163] was not to obviate the need for a citation,"[7] and affirmed the dismissal of an appeal from a decision of an administrative agency for lack of proper citation of a party. Id., 717. In 1984, House Bill No. 5595 was proposed to address the concerns raised by the judicial interpretation of P.A. 79-163 in that case. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., pp. 396–97. By adoption of that bill, the legislature amended General Statutes (Rev. to 1983) § 4-183 (b) to emphasize that service of appeals, when made by mail in accordance with that section, need not involve a sheriff; see Public Acts 1984, No. 84-43, § 1;[8] in order to preserve the simplicity, cost-effectiveness and efficiency of service by mail.[9]

---

[7] "In administrative appeals, the citation is the writ of summons that directs the sheriff or some other proper officer to seek out the defendant agency and to summon it to a particular sitting of a particular court on a specified day." *McQuillan* v. *Dept. of Liquor Control*, 216 Conn. 667, 671, 583 A.2d 633 (1990).

[8] Public Act 84-43, § 1, which amended General Statutes (Rev. to 1983) § 4-183 (b), provides in relevant part: "Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after mailing of the notice of the decision thereon, except that *service upon an agency may be made* by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, *without the use of a sheriff or other officer*, to the office of the commissioner of the agency or to the office of the attorney general in Hartford." (Emphasis added.)

[9] Before the Joint Standing Committee on Judiciary, Attorney Raphael L. Podolsky, speaking on behalf of the legal services training and advocacy project, provided the following testimony in support of House Bill No. 5595: "The third one I want to address is *House Bill No. 5595* which is an act concerning the service of process in appeals of administrative agency decisions. This is a bill basically to correct what I believe to be an erroneous appellate session decision, interpreting a statute you passed in 1979 to accomplish a particular purpose.

"Prior to 1977, there were different procedures for taking appeals from different administrative agencies, and some of them when you took the appeal, you could serve the agency by mail. You basically sent [a] certified letter to the commissioner. In others, you have to have the sheriff serve. In

In 1988, to make administrative procedures more uniform, the legislature passed P.A. 88-317, which extensively amended Connecticut's statutory administrative procedures. See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 377. Public Act 88-317 was intended to "greatly enhance the administrative practices in the state of Connecticut and enhance them from the point of view of the consumer, the public." 31 S. Proc., Pt. 7, 1988 Sess., p. 2481, remarks of Senator

---

1977, the General Assembly attempted to make these procedures uniform and the law that they passed required sheriff service in all cases. It wasn't really noticed at the time that this changed the process, for example, serving welfare appeals. In 1979, the legislature looked at that and decided it had made the wrong decision. That is to say, *the simpler and more efficient* way was that when you're serving the agency, you could serve the agency by certified mail, and [if] you do it yourself, you don't have to pay sheriff fees for that. And the bill was adopted and that's basically what it says. If you examine the legislative history from 1979, there is no question that the intention was to dispense with the sheriff in those cases.

"There are at least two superior court cases that I know of in which that interpretation was confirmed. In 1983, in [*Board of Education* v. *State Board of Education,* supra, 38 Conn. Sup. 712], the appellate session without looking at the legislative history, ruled that the legislature could not possibly have intended to dispense with the sheriff, and thereby interpreted the statute to require that there be a citation and that the sheriff do the service. What this bill does, it restates the 1979 statute. The problem with doing nothing is it has created a great deal of *confusion* for administrative appeals. Because many people took administrative appeals without citing in the sheriff. Without putting a citation to the sheriff, so what's happened is, they have been faced with a jurisdictional motions under the 1983 appellate session case saying that they do not have the right to bring the appeal because they failed to serve the process properly and of course, at this point in time, the time limit for taking the appeal is passed and it's too late to correct the mistake.

"And it seems to me that what the legislature ought to do is treat this as a clarification of reassertion that from 1979 on, what this statute did, was to mean you don't need the sheriff for that purpose." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1984 Sess., pp. 396–97.

The relevant remark regarding the purpose of the amendment was provided by Representative Richard D. Tulisano: "Mr. Speaker, the purpose of this legislation is to make it clear and acknowledge that service of process does not have to be by [the sheriff] of an appeal from an administrative agency." 27 H.R. Proc., Pt. 2, 1984 Sess., p. 722.

James H. Maloney. The amendments structured the regulatory process to assist "the parties to effectively contest the cases." Id., remarks of Senator Maloney. In short, P.A. 88-317 was adopted "to provide the consumer who is using our administrative processes with the same kind of level playing field equity that one would have in using our judicial system." Id., p. 2482, remarks of Senator Maloney. With these policies in mind, the legislature amended § 4-183, along with other statutory administrative procedures. As a result of the amendments, the statutory provision dealing with appeals from administrative decisions was recodified at General Statutes (Rev. to 1989) § 4-183 (c). See P.A. 88-317, § 23.

The successive statutory amendments leading up to the current revision of § 4-183 (c), and their respective legislative histories, show that the legislature intended to simplify administrative procedures in order to make the administrative process easier, and thus more practically useful to the public. Any interpretation of the statute before us must recognize these legislative policies to be consistent with the intent of the legislature. *Johnson* v. *Manson*, 196 Conn. 309, 314, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986) ("[i]t is a cardinal rule of construction that statutes are to be construed so that they carry out the intent of the legislature" [internal quotation marks omitted]).

The option to have service made by mail was added to the statute to make appellate procedures simpler by taking advantage of the efficiency, cost-effectiveness and ease of using the mail. If we were to accept the department's position, there would be a degree of unpredictability associated with the use of the mail that would, in practice, unduly complicate the use of the mail option provided by § 4-183 (c) (1), because an appellant cannot effectively predict when the appeal

papers actually will be delivered to the agency when the mail service is used. We conclude, therefore, that the legislature's goals of simplifying and making administrative procedures more efficient and equitable to the public, are achieved most effectively when service of process of appeals from administrative agencies is deemed perfected under § 4-183 (c) (1) as of the date it is postmarked.

In addition to the general legislative goals that we have gleaned from the history of § 4-183 (c), there is further evidence in support of our conclusion in the language of § 4-183 (c) itself. Section 4-183 (c) provides in relevant part: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency . . . ." The clear import of the foregoing language is that if the agency chooses to mail its final decision, that decision is final as of the postmark date. Where, however, the final decision of the agency is delivered personally to a party, that decision is final upon receipt by that party. Section 4-183 (c) (1) and (2), which provide the methods of effectuating service of appeals on the state agencies, essentially restate these identical alternative methods for the delivery of appeal papers. The comparison of these subdivisions of § 4-183 (c) compels the conclusion that by providing the option of using the United States mail, the legislature did not intend to make the party using the United States Post Office responsible for misdeliveries, nondeliveries or tardy deliveries that may occur, however rare they may be. Such a balanced allocation of respective obligations between the state agencies and the public, with respect to delivery of documents by mail, is rational, practical and fair because neither an agency

nor the public can wield control over the delivery schedules of the post office. The most either can do, when choosing the mail option for delivering documents, is to place those documents in the hands of the post office.

Moreover, in another context, the legislature specifically has adopted the postmark date as the effective statutory date for filing documents where the mail is used for delivering documents to a state agency. Pursuant to General Statutes § 4-147, a notice of claim against the state is deemed filed "with the Office of the Claims Commissioner on the date such notice of claim is postmarked. . . ."[10] See also General Statutes § 4-150 (a) (service of subpoena or other papers upon claims commissioner is perfected as of postmark date). We also note that in our civil practice, service is completed upon mailing. See Practice Book § 10-13.[11] Harmonizing the procedure for service of appeal papers in appeals from administrative decisions with our civil procedures, as we do in this case, will further advance the legislature's

---

[10] It is noteworthy that this provision was added to General Statutes (Rev. to 1983) § 4-147 by Public Act 84-43, § 2, the same public act that amended General Statutes (Rev. to 1983) § 4-183 (b). See footnotes 8 and 9 of this opinion, and accompanying text. In support of the amendment to § 4-147, Representative Richard D. Tulisano remarked: "Mr. Speaker, this part amends the claim statute indicating that a notice is within the time limits for the purpose of making a claim which is generally one year. If it has been mailed within that time period, and not necessarily filed with the Claims Commissioner. *There are times at which they are mailed four or five days ahead of the deadline, but then it fails because it did not get there on time because of the mails.*

"And this will insure equity to the citizens of the state." (Emphasis added.) 27 H.R. Proc., Pt. 2, 1984 Sess., p. 723.

[11] Practice Book § 10-13 provides in relevant part: "Service upon the attorney or upon a pro se party, except service pursuant to Section 10-12 (c), may be by delivering a copy or by mailing it to the last known address of the attorney or party. Delivery of a copy within this section means handing it to the attorney or to the party; or leaving it at the attorney's office with a person in charge thereof; or, if there is no one in charge, leaving it in a conspicuous place therein, or if the office is closed or the person to be served has no office, leaving it at the usual place of abode. . . . Service by mail is complete upon mailing. . . ."

intent "to provide the consumer who is using our administrative processes with the same kind of level playing field equity that one would have in using our judicial system." 31 S. Proc., supra, p. 2482, remarks of Senator Maloney.

The department also asserts that the "change from thirty to forty-five days to serve the agency was a very significant increase in time, and the legislative history makes clear that this increase in time was an attempt to simplify and reduce the existing confusion about the service and the filing of the appeal." On the basis of our review of the relevant legislative history, we agree with the department in this regard.[12] We do not, however, agree with the department that because the appellants were allowed fifteen more days to serve the agency

---

[12] In its report to the legislature in support of P.A. 88-317, the law revision commission provided the following statement with regard to the extension of the thirty day period to forty-five days: "Use of the forty-five day period for agencies, parties and the court should reduce some of the confusion inherent in the present thirty-day and forty-five-day periods. In extending the appeal period fifteen days, the advisory committee decided to eliminate the fifteen day grace period that is permitted in some circumstances under [General Statutes §] 52-49." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 385. Before P.A. 88-317, an appellant was required to serve the agency within thirty days of the mailing of the notice of the agency's final decision, but was required to file the appeal with the appropriate court within forty-five days of the same. See General Statutes (Rev. to 1987) § 4-183 (b). According to Steve Frazzini, the executive director of the Hartford County Legal Aid Society, who was "a member of the advisory group that worked . . . to amend the [UAPA] for the State of Connecticut" in 1988; Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., pp. 262–63; the change from thirty to forty-five days was intended to make the statute simpler to follow. "The problem is that the present statute is very hard to follow. I don't know how many times I have seen lawyers who have thought that they could file the appeal within [forty-five] days and they were safe. The present section has two different filing deadlines. You have to file it, you have to serve the appeal on the agency within thirty days after the decision and then within another [fifteen] days, you have to file the appeal with the court.

"But the number of people who do both within forty-five days is legion, and I think it's really unfair that the appeal process is so difficult to understand and to comply with. What this bill does is it makes . . . things simpler. For example, one [forty-five] day appeal period, serve the party, serve the

under P.A. 88-317, the legislature necessarily intended to set the date of the perfection of service as the date the appeal papers are received. The department has asserted that "[t]hose wishing to file an appeal were thus given a 50 percent increase in the time to serve their appeal on the agency. This increase did come with a price, however. It was given in exchange for a true and clear cutoff date of forty-five days for the appeal to be at the offices of the agency regardless of whether service was made by either mail or sheriff method. A hard and fast rule was adopted so there would be certainty and fairness for the parties and the agency." There is simply no evidence before this court of the compromise that the department claims to have been the foundation for such an increase in time.[13] There is, however, evidence to the contrary.

In 1979, the legislature extended the period of time for filing appeals from agency decisions from thirty days to forty-five days. The legislative record in support of P.A. 79-163 provides: "In 1977, however, the General Assembly adopted P.A. 77-603, which made the appeal process uniform from all state agencies. That statute has been held to require that both service and filing be completed within the [thirty] day period. *Bagley* v. *Rice*, [Superior Court, judicial district of Waterbury (1978), cert. denied, 176 Conn. 769, 397 A.2d 119 (1979)]. This imposes an intolerable burden on the person aggrieved by the agency's decision, especially if he proceeded before the agency without a lawyer. He must wait for the agency's decision to arrive by mail, try to find a lawyer and get an appointment, have his lawyer research the appeal and prepare the papers, and have

---

agency both. No confusion [over] how long you've got to do for what you've got to do." Id., p. 264, remarks of Steve Frazzini. It appears that the two deadlines were harmonized to make procedures "simpler and fairer." Id., remarks of Steve Frazzini.

[13] The department has not cited, and we have not been able to locate, any legislative record or other evidence in support of these assertions of fact.

the papers given to a sheriff, served on the agency, and filed with the court—all within [thirty] days. *The time limit is so short that it can, as a practical matter, deny many people the right to appeal.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1979 Sess., p. 521, remarks of Attorney Raphael L. Podolsky on behalf of the legal services training and advocacy project.

The foregoing statement suggests that the legislature knew of the delays that would in practice frustrate an appellant's right to appeal, and thus extended the time period for filing of such appeals so that the public more effectively could pursue appeals from agency decisions. If service of process upon an agency pursuant to § 4-183 (c) (1) were required to be effected by actual delivery of appeal papers to the agency, as suggested by the department, an appellant would be further encumbered by the task of making a guess as to how much time should be allowed for the proper delivery of appeal papers through the mail. Such a result would further complicate the steps that an appellant must take to pursue effectively an appeal, in addition to having the practical effect of reducing the time period that an appellant is allowed to prepare for an appeal. In short, it does not advance, rather, it effectively hinders an appellant's efforts, thus frustrating the legislature's intent to provide appellate procedures that are simple and friendly to the public.

Moreover, the legislative intent in extending the period to effectuate service to forty-five days was to provide "certainty in terms of appeal dates, making the dates for appeals uniform throughout law." 31 S. Proc., supra, p. 2481, remarks of Senator Maloney. The department's proposed application of § 4-183 (c) (1) would undermine certainty and uniformity in appeals from administrative decisions. If the date of receipt of appeal documents were to be the date of perfection of service,

then appellants could not be certain when the right to make service would terminate, and thus could not effectively plan to preserve their right to appeal. We have held that failing to make proper service on the agency in accordance with the relevant statutory provisions is a jurisdictional defect subjecting the appeal to dismissal. See *Tolly* v. *Dept. of Human Resources*, supra, 225 Conn. 27. Certainty as to the exact legal date for perfecting service is, therefore, crucial. If the date that the service is perfected is set as the date appeal papers are received by the appropriate agency, an appellant's legal rights would be at the mercy of happenstance against which the appellant has no practical defense, except for an educated guess. We are hesitant to leave the public's right to have their claims addressed by the court, as statutorily allowed, to guesswork. Additionally, the actual period of time for every appellant will be different because, in any given case, appeal papers may take three or four days, or even longer, to be delivered by mail, thus undermining uniformity in the applicability of the statute to all appellants.

On the other hand, under typical circumstances, when the date for perfection of service is set at the postmark date, an appellant easily can calculate when the appeal papers must be deposited in the mail in accordance with § 4-183 (c) (1) in order to preserve his or her right to appeal. This result makes the date of perfection certain for all appellants, and it uniformly gives each appellant forty-five days from the date of mailing, or the same from the date of personal delivery, of an agency's decision to serve appeal documents, as provided by § 4-183 (c).

The department also posits that the result it is seeking is, as a matter of public policy, necessary to achieve a determinable date for finality of administrative decisions so that interested parties, including the agency, will not be left surmising as to whether the decision of

the agency will be final, and thus enforceable. We first note that the statutory changes to administrative procedures that are relevant to the issue raised in this appeal were designed to favor an appellant's position, not that of the agency. Second, the filing of an appeal does not affect the enforceability of an agency's decision. Pursuant to § 4-183 (f), "[t]he filing of an appeal shall not, of itself, stay enforcement of an agency decision. An application for a stay may be made to the agency, to the court or to both. . . ." The proper date of completion of service of process, therefore, bears no relation to enforceability of an administrative decision. It follows that, as a matter of public policy, setting the date of the receipt of the appeal papers as the date that the agency's decision becomes final, and thus enforceable, is not a necessary step to further the policies that the department is seeking to advance.

Moreover, § 4-183 (d) provides: "The person appealing, not later than fifteen days after filing the appeal, shall file or cause to be filed with the clerk of the court an affidavit, or the sheriff's return, stating the date and manner in which a copy of the appeal was served on each party and on the agency that rendered the final decision, and, if service was not made on a party, the reason for failure to make service. *If the failure to make service causes prejudice to any party to the appeal or to the agency, the court, after hearing, may dismiss the appeal.*" (Emphasis added.) "If service has not been made on a party, the court, on motion, shall make such orders of notice of the appeal as are reasonably calculated to notify each party not yet served." General Statutes § 4-183 (e).

Section 4-183 (d) provides a standard for dismissing appeals when parties other than agencies are not served, or are served with defective papers. This statutory standard is met upon a showing of actual prejudicial consequences stemming from a failure of service;

a mere showing of untimely service is not grounds for dismissal. In other words, when a party other than the agency does not receive appeal documents within the prescribed time, an appellant's right to appeal is not exposed to automatic dismissal based on lack of subject matter jurisdiction.[14] We cannot, therefore, as a matter of public policy, raise a jurisdictional barrier against appellants for failing to deliver appeal documents to interested parties within the time prescribed by § 4-183 (c), when the legislature has devised another policy. It follows that we cannot raise the same barrier based on the argument that because the agency did not receive the appeal papers in a timely manner, the interest of other parties compels the policy that we dismiss the

---

[14] There is an apparent conflict between subsections (c) and (d) of § 4-183 with respect to the legal consequences associated with the failure of an appellant to serve the agency. Section 4-183 (c) provides that "failure to make . . . service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. . . ." The law revision commission in elaborating on the application of subsection (c) of § 4-183 stated: "Failure to serve parties other than the agency that rendered the final decision within the forty-five days is not a jurisdictional defect. Such failure to serve does, however, subject the appeal to dismissal on a showing of prejudice." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1988 Sess., p. 385; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., p. 264, remarks of Steve Frazzini, executive director of the Hartford County Legal Aid Society ("[T]he number of cases where appeals have been dismissed because some supposedly vital party, not the agency, but someone else [was] not served are also far too frequent. What this bill says is that if you serve the agency on time, then the authority to serve anybody else who's concerned at the time isn't critical as long as you do serve them and as long as that party isn't prejudiced by your serving them late."). Section 4-183 (d) provides, however, that "[i]f the failure to make service causes prejudice to any party to the appeal *or to the agency,* the court, after hearing, may dismiss the appeal." (Emphasis added.) In *Tolly* v. *Dept. of Human Resources,* supra, 225 Conn. 28–29, we resolved this apparent conflict, and harmonized the two subsections of § 4-183 by concluding that a complete failure to serve the agency is the kind of defect in the service that deprives the court of subject matter jurisdiction; whereas, a defect in the papers effecting service makes the appeal subject to dismissal upon a showing of prejudice to the agency.

appeal for having a jurisdictional defect. Under the statute, the interested parties do not have the right to have appeals dismissed for jurisdictional defects when there is an untimely service, and it would be improper to allow interested parties to gain such a right vicariously.

We conclude, therefore, that to perfect service pursuant to § 4-183 (c) (1), an appellant needs only to have the appeal postmarked within the forty-five day period.[15]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court for further proceedings according to law.

In this opinion the other justices concurred.

---

[15] In *Bittle* v. *Commissioner of Social Services*, supra, 48 Conn. App. 717, the Appellate Court relied, in part, on our decision in *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 633 A.2d 305 (1993), and concluded that to effect service of process by mail pursuant to § 4-183 (c), the agency must receive the appeal documents. In that case, as the Appellate Court correctly recognized, we were concerned with the filing of appeal documents with the court, not the proper statutory procedure for service of process on agencies. *Bittle* v. *Commissioner of Social Services*, supra, 717. That decision, therefore, does not control the issue in this appeal. Although we have concluded that to effect service upon an agency an appellant need only deposit the appeal documents in the mail, our conclusion in this appeal in no way implicates our decision in *Glastonbury Volunteer Ambulance Assn., Inc.*