[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Frederick C. Allard, Suzanne P. Allard, and Caroline Thompson, appeal from a decision of the defendant, the zoning board of appeals of the town of Stonington (the ZBA), granting a variance to the defendants, James Sheehan and Gleanna Doyle.
I. BACKGROUND
The defendants James Sheehan and Gleanna Doyle are contract purchasers of premises, owned by the defendant Debra Carta.[1] (Complaint, ¶ 1; Answers, ¶ 1.) The premises consist of a house and lot located on Holmes Street in Mystic. (Complaint, ¶ 1; Answers, ¶ 1.) The lot has an area of 6,050 square feet, and constitutes a nonconforming lot located in the RH-b zone under the zoning regulations of the town of Stonington, which require a minimum lot area of 10,000 square feet. (Complaint, ¶ 2; Answers, ¶ 1.)
By an application dated October 15, 1999, Sheehan and Doyle submitted a request for a variance in the application of the Stonington zoning regulations. (Record on Review "ROR", Item 18.) The application sought a variance with respect to the backyard setback and the floor area ratio to allow the construction of a two-story addition. (ROR, Item 18.) Specifically, Sheehan and Doyle sought to increase the floor area ratio from .25 to .39, with an increase in square footage from 1,512 to 2,382. (ROR, Item 18, Item 19, p. 2.) The maximum floor area ratio under the zoning regulations is .25. (ROR, Item 21, § 5.1.1.) On the application, Sheehan and Doyle claimed hardship because "[t]he lot was non-conforming and undersized when zoning was implemented. We want to bring the house up to date and to the standard of newer home construction. This requires adding space forthings such as adequate bathrooms, bedrooms, and appliance space for the kitchen. What we are proposing does not interfere with any of the neighbors' views. The addition does not affect the front or side yards and only reduces the rear yard by fifteen feet." (ROR, Item 8.)
On November 9, 1999, the ZBA held a public hearing on the application, at which the plaintiffs Frederick C. Allard and Caroline Thompson, as well as other neighboring landowners, spoke in opposition to the CT Page 5225 variance. (ROR, Item 11.) After the discussion, all members of the ZBA voted in favor of the application. (ROR, Item 11.) The ZBA's record of decision, under the heading "Reason and/or stipulations," states: "Undersize lot — approved as presented. Desire to bring home up to code. No adverse impact on neighborhood." (ROR, Item 12.) The plaintiffs now appeal from the granting of the variance. The appeal was heard by the court on December 14, 2000. Supplemental briefs were submitted on January 3, 2001 and January 18, 2001.
II. JURISDICTION
Appeals from decisions of a zoning board of appeals to the Superior Court are governed by C.G.S. § 8-8. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." (Internal quotation marks omitted.)Bridgeport Bowl-O-Rama, Inc. v. Zoning Board of Appeals, 195 Conn. 276,283, 487 A.2d 559 (1985). "Such provisions are mandatory, and, if not complied with, the appeal is subject to dismissal." (Internal quotation marks omitted.) Office of Consumer Counsel v. Dept. of Public UtilityControl, 234 Conn. 624, 640, 662 A.2d 1251 (1995).
A. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). "The jurisdictional requirement of aggrievement serves both practical and functional purposes in assuring that only those parties with genuine and legitimate interests are afforded an opportunity to appeal . . . Aggrievement falls within two broad categories, classical and statutory." (Citation omitted.) Zoning Board of Appeals v. Planning Zoning Commission, 27 Conn. App. 297, 300-301, 605 A.2d 885 (1992).
For the purposes of appeals from a zoning board of appeals pursuant to C.G.S. § 8-8, "`aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." C.G.S. § 8-8 (a) (1). In this case, the Allards have submitted a certified copy of a deed demonstrating that they are the owners of property located at 3 Bay Street in Mystic. (Plaintiffs' exhibit 2.) The testimony of Suzanne P. Allard and the tax assessor's map (Court's exhibit 1), further establish that their property is less than 100 feet from the subject property. In addition, Thompson has shown by testimony and by submission of a deed (Plaintiffs' exhibit 1), that she is the owner of property abutting the subject property. The court therefore concludes that the plaintiffs are aggrieved under § 8-8 (a)(1). CT Page 5226
B. Timeliness of the Appeal and Service
An appeal from a zoning board of appeals must be commenced within fifteen days of the date that the board's notice of decision is published. C.G.S. § 8-8 (b). Here, the notice of decision was published in the New London Day and the Westerly Sun on November 16, 1999. (ROR, Items 16-17.) The sheriffs return indicates that the sheriff served the ZBA by leaving a true, attested copy of the original writ, summons and complaint with the clerk of the town of Stonington as well as the chairman of the ZBA on November 29, 1999. The sheriff served Sheehan on November 30, 1999, and the other defendants on December 8, 1999.
It is clear that the ZBA and Sheehan were timely served in compliance with § 8-8 (b). The additional defendants were not served within fifteen days of publication of the notice of decision. General Statutes § 8-8 (f), however, provides that "failure to make service within fifteen days on parties other than the board shall not deprive the court of jurisdiction over the appeal. . . . If the failure to make service causes prejudice to the board or any party, the court, after hearing, may dismiss the appeal or may make such other orders as are necessary to protect the party prejudiced." The defendants have not claimed any prejudice, and the court therefore concludes that each of the parties to the appeal was served in a timely manner.
C. Citation
1. Use of Form JD-CV-1
"In administrative appeals, the citation is the writ of summons that directs the sheriff or some other proper officer to seek out the defendant agency and to summon it to a particular sitting of a particular court on a specified day." (Internal quotation marks omitted.) Bittle v.Commissioner of Social Services, 249 Conn. 503, 512 n. 7, 734 A.2d 551
(1999). Practice Book § 8-1 provides that Form JD-CV-1 shall not be used in administrative appeals. There is no dispute that the plaintiffs nevertheless used the civil writ of summons (JD-CV-1). "[A]s long as [the form] contains a proper citation, signed by a competent authority, its use does not call into question the jurisdiction of the Superior Court to entertain an appeal. . . . If the form . . . clearly apprises all concerned that a lawsuit is being instituted, and contains notice of the return date, and the requirement for filing an appearance, and also directs a competent authority to summon the defendant, then the policy of giving notice to the defendant of the nature of the proceedings has been served. . . . Absent an affirmative showing of prejudice by the defendant . ., we conclude that the mistaken use of [JD-CV-1] does not warrant the CT Page 5227 dismissal of an administrative appeal." (Citations omitted; internal quotation marks omitted.) Cardoza v. Zoning Commission, 211 Conn. 78,84-85, 557 A.2d 545 (1989). Because the defendants do not claim any prejudice as a result of the plaintiffs' use of the civil summons, the court finds that the plaintiffs' use of the civil summons form does not deprive the court of subject matter jurisdiction.
 2. Service on the Chairman of the ZBA and the Clerk of the Municipality
Connecticut General Statutes § 8-8 (e) provides:
 "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. Service on the chairman or clerk of the board and on the clerk of the municipality shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the chairman or clerk of the board or the clerk of the municipality a necessary party to the appeal."
The summons in this case directed service on the ZBA, Sheehan, Doyle and Carta, but did not specifically direct the sheriff to serve either the chairman or clerk of the board or the clerk of the municipality. As noted above, however, the sheriff did in fact deliver true and attested copies of the appeal to both the chairman of the board and the municipal clerk.
Traditionally, the failure to specifically list the chairman or clerk of the board or the clerk of the municipality deprived the court of jurisdiction and required dismissal. See Simko v. Zoning Board ofAppeals, 205 Conn. 413, 421, 533 A.2d 879 (1987), on reconsideration,206 Conn. 374, 538 A.2d 202 (1988). Seeking to soften the harsh result of the Simko cases, the legislature in 1988 amended both § 8-8 and § 8-28[2] to provide that "service upon the clerk of the municipality shall be for the purpose of providing additional notice of such appeal to said board and shall not thereby make such clerk a necessary party to such appeal." See Public Acts 1988, No. 88-79, § 1 (b). Additionally, Public Act 88-79 contained a saving provision designed to prevent the dismissal of appeals filed between October 1, 1985 and December 1, 1987. See Public Acts 1988, No. 88-79, § 3.
Section 8-8, as amended by Public Act 88-79, was subsequently interpreted by the Supreme Court. In Capalbo v. Zoning Board of Appeals, CT Page 5228208 Conn. 480, 547 A.2d 528 (1988), the municipal clerk was served with a copy of the appeal, although the clerk had not been named in the citation as a party to the appeal Id., 485. The Supreme Court held that "[e]ven as amended by Public Acts 1988, No. 88-79, § 1, General Statutes § 8-8
(b) still requires the clerk of a municipality to be served with true and attested copies of the appeal. Actual delivery of a copy of the appeal by the sheriff to the town clerk . ., is of no legal effect if there is no direction in the citation to serve the clerk." (Emphasis in original.)Id., 489. The Capalbo court did ultimately conclude that it could reach the merits of the appeal, but did so solely by authority of the saving provision contained in Public Acts 1988, No. 88-79, § 3(a). Id. By its own terms, however, the saving provision was applicable only to appeals taken between October 1, 1985 and December 1, 1987, and therefore is inapplicable to the present appeal.
The operation of Public Act 88-79 was again addressed in Spicer v.Zoning Commission, 212 Conn. 375, 562 A.2d 21 (1989). In that case, the court reaffirmed the principle that "General Statutes § 8-8 (b) still requires the clerk of a municipality to be served with true and attested copies of the appeal" and that "actual delivery of an appeal to a party without direction in the citation to serve that party was not legally "service." (Emphasis in original.) Id. 379
Two months after the Spicer case was decided, C.G.S. § 8-8 was again amended by Public Acts 1989, No. 89-356, § 1, which created the present language of § 8-8 (e) as quoted above. Significantly, Public Act 89-356 eliminated the language, formerly in § 8-8 (b), requiring that notice be given "by serving a true and attested copy upon the clerk of the municipality. . . ." This was the very language upon which theCapalbo and Spicer courts relied. The amended statute provides a new definition for service: "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made byleaving a true and attested copy of the process with, or at the usualplace of abode of the chairman or clerk of the board. and by leaving atrue and attested copy with the clerk of the municipality." (Emphasis added.) C.G.S. § 8-8 (e). In view of the amendment, Capalbo andSpicer, which interpreted different statutory language, do not necessitate dismissal here.
In addition, Public Act 89-356 also created § 8-8 (p) (subsequently renumbered"(o)"), which provides: "The right of a person to appeal a decision of a board to the Superior Court, and the procedure prescribed in this section, shall be liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice." Here the chairman of the board and the municipal clerk were both given copies of the appeal by the sheriff, and therefore had notice of the CT Page 5229 appeal. The court thus finds that dismissal of this action would work an injustice and under § 8-8 (p), therefore, the appeal should not be dismissed.[3] The court concludes that it does not lack subject matter jurisdiction, and decides this appeal on its merits.
III. STANDARD OF REVIEW
"The standard of review on appeal from a zoning board's decision to grant or deny a variance is well established." Bloom v. Zoning Board ofAppeal, 233 Conn. 198, 205, 658 A.2d 559 (1995). The trial court must determine whether the zoning board's decision in granting the variance was arbitrary, illegal or an abuse of discretion. Id. 205-206. "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons. . . . The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Id., 206.
In appeals from administrative zoning decisions, the evidence supporting the reason must be substantial. Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940 (1987). "The `substantial evidence' standard requires enough evidence to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (Citations omitted; internal quotation marks omitted.) Kaufman v. ZoningCommission, 232 Conn. 122, 151, 653 A.2d 798 (1995).
"The trial court's function is `to determine on the basis of the record whether substantial evidence has been presented to the board to support [the board's] findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can reasonably be inferred. . . . Where the board states its reasons on the record, we go no further." Norwood v. Zoning Board ofAppeals, 62 Conn. App. 528, 532 (2001) (citing Jaser v. Zoning Board ofAppeals, 43 Conn. App. 545, 547-48). As set forth above, the ZBA here did set forth its reasons as: "Undersize lot — approved as presented. Desire to bring home up to code. No adverse impact on neighborhood." (ROR, Item 12.)
IV. DISCUSSION
"Variances are, in a sense, `the antithesis of zoning.' T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 124. Zoning is "regulation by the municipality of the use of the land within the CT Page 5230 community, and of the buildings and structures which may be located thereon, in accordance with a general plan. . . ." 1 C. Rathkopf, The Law of Zoning and Planning (4th Ed. 1995) § 1.01. General Statutes §8-2 authorizes the zoning commission of each municipality to regulate, inter alia, the size, location and use of buildings. In accordance with § 8-2, a zoning regulation must be applied uniformly throughout each district. A variance, to the contrary, constitutes permission to act in a manner that is otherwise prohibited under the zoning law of the town." (Internal quotation marks omitted.) Simko v. Ervin, 234 Conn. 498,505-506, 661 A.2d 1018 (1995).
The law governing variances is well established. "Section 8-6 (a)(3) provides in relevant part that a zoning board of appeals may `determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result inexceptional difficulty or unusual hardship. . . .'" (Emphasis in original) Reid v. Zoning Board of Appeals, 235 Conn. 850, 856-57,670 A.2d 1271 (1996).
Our Supreme Court has interpreted § 8-6 "to authorize a zoning board of appeals to grant a variance only when two basic requirements are satisfied: (1) the variance must be shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning ordinance must be shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. . . . Proof of exceptional difficulty or unusual hardship is absolutely necessary as a condition precedent to the granting of a zoning variance." (Citations omitted; internal quotation marks omitted.) Bloom v. Zoning Board ofAppeals, 233 Conn. 207-208.
The plaintiffs' primary argument in support of their appeal from the ZBA's granting of the variance is that there is nothing in the record to justify the ZBA's finding of a hardship. Specifically, the plaintiffs argue that there has been no showing of a hardship relating specifically to the property in question, rather than to the properties of the zone generally, because many of the other properties in the neighborhood are also nonconforming lots of less than 10,000 square feet. The defendants, however, contend that the tax assessor's grand list (ROR, Item 18) shows that only half of the properties in the zone are nonconforming. The defendants argue further that the record shows that some of the other nonconforming properties in the zone actually have floor area ratios much CT Page 5231 higher than the ratio sought by Sheehan and Doyle. According to the defendants, these facts were sufficient to support a conclusion that the operation of the zoning regulations has caused Sheehan and Doyle an unusual hardship.
Under C.G.S. § 8-6 (a)(3), zoning boards of appeals have the power "to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed."
"It is well settled that the hardship must be different in kind from that generally affecting properties in the same zoning district."Francini v. Zoning Board of Appeals, 228 Conn. 785, 790, 639 A.2d 519
(1994); see also Makar v. Zoning Board of Appeals, 150 Conn. 391, 396
(1963). As set forth in Ward v. Zoning Board of Appeals, 153 Conn. 141,144-45, 215 A.2d 104 (1965):
 When a zoning board of appeals grants a variance on grounds which apply equally to a large number of properties in a given area, it in effect establishes a new zoning regulation applicable to that area. However, the establishment of and changes in general zoning regulations are a legislative function . . . and when the board uses its variance power to change these general rules, it encroaches on this legislative area and thereby acts in abuse of its discretion. The fact that no similarly situated property owners have actually requested variances is of no import, as long as it appears that the rationale behind the granting of a variance for one piece of property would apply in like manner to the surrounding properties." 153 Conn. at 144-45.
As stated above, the first reason given by the ZBA for granting the variance is that the subject property is an "[u]ndersize lot." By the defendants' own admission, however, thirty-four of the sixty-six lots in the zone are nonconforming undersize lots. A review of the tax assessor's CT Page 5232 list (ROR, Item 18-attachment) reveals that twenty-four of those thirty four properties are approximately the same size as or smaller than the subject property. This is a case, therefore, in which the ZBA has "[granted] a variance on grounds which apply equally to a large number of properties in a given area" Id. 145. As such, the undersize nature of the lot does not constitute a condition "especially affecting such parcel but not affecting generally the district in which it is situated," resulting in "exceptional difficulty or unusual hardship." The ZBA therefore could not properly have found that the undersize nature of the lot was a sufficient hardship to justify the granting of a variance. The defendants rely on Stillman v. Zoning Board of Appeals, 25 Conn. App. 631, 636-37
(1991), in support of the claim that an undersize lot can constitute a hardship. In Stillman, however, it was not merely the size of the lot that constituted the hardship, but also the location of a well and a septic system that constituted a hardship requiring a variation from the setback requirement. Id.
The defendants nevertheless argue that the property is unusual in that the house is especially well-centered on the premises, and could therefore be expanded without encroaching upon the property line setbacks. This argument fails for a number of reasons. First, the record on review does not contain substantial evidence showing that the house on the subject property is particularly well-centered as compared to other homes in the area. Second, the fact that the plans for expansion would not violate the regulations regarding setbacks is not a basis for granting a variance from the regulations regarding floor area ratio. Third, it is insufficient to show simply that the property is unique, the literal application of the zoning regulations must be shown to cause exceptional difficulty or unusual hardship. Even assuming arguendo that the house is in fact unusually well-centered on the property, this cannot be said to constitute an unusual hardship, but rather is in the nature of an advantage. While this may be relevant to the issue regarding impact on the neighborhood, it does not constitute an unusual hardship.
The second reason given by the ZBA for granting the variance was the "[diesire to bring [the] home up to code." The original application for the variance mentioned the desire "to bring the house up to date and to the standard of new home construction." The application stated that "[t]his requires adding space for things such as adequate bathrooms, bedrooms and appliance space for the kitchen." Otherthan the ZBA's record of decision, there is nothing in the record to indicate what "code" or "codes" the home violates, or any ways in which the home violates the code. Seven witnesses testified at the hearing on November 9, 1999, including four neighbors who opposed the variance, (Mr. Allard, Ms. Thompson, Mr. Waterman and Ms. Soloduik). Ms. Doyle and Mr. Sheehan (briefly) also testified along with one neighbor (Mr. Price) who CT Page 5233 supported the variance. The testimony ranged from privacy concerns of an adjoining neighbor to concerns regarding increased congestion from tourism and commercial establishments, and possible future uses of the property. None of the witnesses, including Ms. Doyle and Mr. Sheehan, addressed any issues concerning any possible code violations, focusing more on issues as to whether the proposed two-story addition would adversely affect the neighborhood and the neighbors' enjoyment of their properties. In fact, the court's review of the record[4] discloses only one reference to the condition of the house and that was a reference by Ms. Thompson to the effect that the house was in very good shape and that electrical equipment had been replaced. (ROR Item 19, p. 5). Although there was a statement by a ZBA member that the house was originally built in 1890, the conclusion of the ZBA that the house needed to be brought "up to code" is entirely unsupported by the evidence, and is therefore inadequate.[5]
Because the record lacks substantial evidence upon which the ZBA could have based a finding of hardship, the variance was improperly granted. The plaintiffs' appeal is sustained.
JONGBLOED, J.