## STANLEY V. TUCKER *v.* CONNECTICUT INSURANCE PLACEMENT FACILITY
### (12112)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued February 9—decision released April 10, 1984

*Stanley V. Tucker,* pro se, the appellant (plaintiff).

*James F. Meehan,* with whom, on the brief, was *Joseph F. Skelley, Jr.,* for the appellee (defendant).

*Richard H. Goldstein* and *Paul H. Burnham* filed a brief as amici curiae.

PARSKEY, J. This appeal concerns the applicability of the immunity provisions of General Statutes § 49-73a et seq. to the payment by an insurance company of fire loss proceeds to a municipality for outstanding municipal taxes owed by the insured.

The plaintiff insured[1] brought an action against the defendant to recover insurance proceeds and damages arising out of a fire loss with respect to certain real property located at 963 Capitol Avenue in the city of Hartford. The defendant filed three special defenses, the thrust of which essentially alleged the same thing, namely, that it had paid the proceeds to the city pursuant to General Statutes § 49-73a et seq. to cover preexisting tax liens on the subject property and was, therefore, immune from liability to the insured under the provisions of the statute. Each party moved for summary judgment, the plaintiff's motion being limited to the issue of liability. The trial court denied the plaintiff's motion and granted the defendant's motion. The plaintiff appealed to the Appellate Session of the Superior Court from the judgment rendered in favor of the defendant. The Appellate Session found no error in the trial court's action. Upon the granting of certification, the plaintiff appealed to this court. We find error.

Were it not for the immunity statute there is, in this case, no question but that the defendant would have been obligated to pay to the insured the fire insurance proceeds within the time period specified in the policy. General Statutes § 49-73g[2] relieves the insurance com-

---

[1] The fire insurance policy was issued to the plaintiff and Frank Smith Associates, Inc., receiver.

[2] "[General Statutes] Sec. 49-73g. INSURANCE COMPANY NOT TO BE HELD LIABLE FOR PAYMENTS TO MUNICIPALITY. An insurance company shall not be liable to any insured owner, mortgagee, assignee or other interested party for any amounts paid by it to a municipality pursuant to the provisions of sections 12-172 and 49-73a to 49-73i, inclusive, and in reliance upon information contained in any statement provided by a municipality pursuant to section 49-73d. When acting in accordance with the provisions of

pany from such obligation if the proceeds are paid to the municipality for outstanding tax liens and if the conditions specified in § 49-73d are satisfied.

Section 49-73d[3] requires the insurance company to notify the town clerk before paying any fire insurance proceeds and to demand in writing a statement indicat-

sections 12-172 and 49-73a to 49-73i, inclusive, an insurance company shall not be held liable in any manner and shall not be deemed in violation of section 38-61 relating to unfair claims practices for any action taken by it, including withholding payment of any insurance proceeds otherwise payable or for the release or disclosure of any information by it under sections 12-172 and 49-73a to 49-73i, inclusive."

[3] "[General Statutes] Sec. 49-73d. INSURANCE COMPANY TO NOTIFY TOWN CLERK OF DEMAND IN WRITING OF A STATEMENT OF LIENS. (a) Prior to the payment of any insurance proceeds for loss or damage to real estate caused by fire, provided the amount of the proceeds for the loss payable under the policy is five thousand dollars or more, the insurance company required to pay such proceeds shall notify the town clerk of the town in which such loss or damage has been sustained and demand in writing, by registered or certified mail, that a statement indicating the amount of all liens filed pursuant to sections 49-73a and 49-73b be delivered to such insurance company at a specified address, in person or by registered or certified mail, within twenty days from the date of receipt by the town clerk of such demand. Upon the failure of the town clerk to notify the insurance company of the existence of any such liens in said manner, the right of the municipality to claim against such proceeds shall terminate and the lien thereon shall be dissolved. The insurance company may rely conclusively upon the amount of the taxes or expenses due as set forth in such notice of lien in making any payments of proceeds to any person.

"(b) Within thirty days of receipt of a notice of lien received from the town clerk pursuant to subsection (a) of this section and a final determination of the insurance company's obligation to pay fire insurance proceeds, the insurance company shall pay all or a portion of the proceeds otherwise payable to the insured directly to the municipality in satisfaction of the total amount of delinquent real estate taxes or incurred expenses as set forth on the certificate of lien and shall deduct the amount thereof from the proceeds otherwise payable to the insured. A receipt by the town clerk of the municipality shall be evidence of payment of such amount by the insurance company on account of its liability under its policy to the insured."

ing the amount of all liens filed pursuant to § 49-73a.[4] The latter section, together with § 12-173,[5] requires the town clerk to give notice in his certificate of lien of his intention to claim against the fire insurance proceeds. The statement must be delivered to the insurance company in person or by registered or certified mail, within twenty days from the date of the receipt by the town clerk of the insurance company's demand. The insur-

[4] "[General Statutes] Sec. 49-73a. LIENS ON PROCEEDS OF FIRE INSURANCE FOR OUTSTANDING MUNICIPAL TAXES. The interest of each person in the proceeds of any policy issued by an insurance company providing fire insurance coverage for loss or damages caused by fire on an item of real estate, including any policy written pursuant to the provisions of section 38-201h, provided the amount of the proceeds for the loss payable under such policy is five thousand dollars or more, shall be subject to any tax lien on such item of real estate continued pursuant to the provisions of section 12-173. No such lien shall be valid unless the tax collector of the municipality wherein such items of real estate is situated makes and files in the office of the town clerk a certificate of lien, pursuant to the provisions of section 12-173, giving notice of his intention to claim against such proceeds. Such lien shall exist from the fifteenth day succeeding the date of entry of such certificate in the land records. Any such lien may be discharged in accordance with said section 12-173."

[5] "[General Statutes] Sec. 12-173. CERTIFICATE CONTINUING LIEN. DISCHARGE. The collector of each municipality, by pursuing the method authorized by either section 12-174 or 12-175, may continue any tax lien existing against any item of real estate to secure the payment of the tax assessed by such municipality thereon, as such tax has been increased by legal interest, fees and charges, by making out and filing, within the time limited by section 12-174 or 12-175, in the office of the town clerk of the town wherein such real estate is situated, a certificate containing the following information: (1) The name of the person against whom such tax appears in the rate bill; (2) a description of such real estate; (3) the principal of such tax due thereon, the amount of which, with interest, if any, and fees and other charges, is secured by such lien; (4) the date or dates when the principal of such tax became due; and (5) a statement giving notice of his intention to file a lien pursuant to sections 12-172 and 49-73a to 49-73i, inclusive, against the proceeds of any policy of insurance providing coverage for loss or damage caused by fire, if a loss or damage has occurred. The town clerk shall record such certificate in the land records. Any tax lien so continued, when the tax has been paid with interest, fees and charges as provided by law, shall be discharged by a certificate of the then collector of taxes. Such certificate of release shall be delivered by such collector to the town clerk, who shall record it in the land records."

ance company "may rely conclusively upon the amount of the taxes . . . due as set forth in such notice of lien in making any payments of proceeds to any person." General Statutes § 49-73d (a).

With its motion for summary judgment the defendant filed affidavits of M. R. Anderson,[6] the defendant's

---

[6] "AFFIDAVIT OF M. R. ANDERSON

"The undersigned, M. R. Anderson, being duly sworn, says:

"1. I am M. R. Anderson.

"2. I believe in the requirements of an oath.

"3. I am over the age of eighteen (18).

"4. I am the Claims Manager for the defendant, Connecticut Insurance Placement Facility, 224 Pitkin Street, East Hartford, Connecticut.

"5. The Connecticut Insurance Placement Facility insured the property located at 963 Capitol Avenue, Hartford, Connecticut. (See policy attached hereto as Exhibit 1).

"6. On January 25, 1981 a fire loss occurred at 963 Capitol Avenue for which a claim for fire insurance proceeds was made.

"7. On May 8, 1981, through Connecticut Insurance Placement Facility's adjuster, A. E. Oberhaus, Inc., the defendant notified the City of Hartford of its intention to pay fire losses on the property 963 Capitol Avenue.

"8. On May 28, 1981 the City of Hartford sent a registered letter to A. E. Oberhaus, Inc., the adjuster for Connecticut Insurance Placement Facility notifying the defendant that tax liens in the amount of $26,727.40 existed on the property located at 963 Capitol Avenue, Hartford, Connecticut.

"9. On June 11, 1981 Frank Smith Associates, receiver for the property 963 Capitol Avenue, executed a proof of loss in the amount of $5,638.65. (See attached hereto).

"10. On April 23, 1981 Stanley Tucker executed a proof of loss for the property 963 Capitol Avenue in the amount of $5,638.65. (See attached hereto).

"11. On December 21, 1981 the defendant, Connecticut Insurance Placement Facility, paid the City of Hartford $5,638.65 as required by Conn. Gen. Stat. Ann. § 49-79a et seq.

"12. On January 25, 1982 the City of Hartford issued a receipt for the defendant, Connecticut Insurance Placement Facility, in the amount of $5,638.65. Said amount was applied against pre-existing delinquent taxes on the property 963 Capitol Avenue. (See attached hereto Tax Receipt).

Respectfully submitted,

/s/ M. R. Anderson
Claims Manager

Filed March 15, 1982."

claims manager, and of Thomas Sataro[7] and Rose M. Blesso,[8] tax collector and deputy town clerk, respectively, of the city of Hartford. Anderson stated that

[7] "AFFIDAVIT OF THOMAS SATARO

"The undersigned, Thomas Sataro, being duly sworn, says:

"1. I am Thomas Sataro.

"2. I believe in the requirements of an oath.

"3. I am over the age of eighteen (18).

"4. I am the Tax Collector of the City of Hartford.

"5. As Tax Collector of the City of Hartford, it is one of my duties to issue certificates of tax liens. I also issue receipts to insurance companies for monies paid to discharge delinquent taxes pursuant to Conn. Gen. Stat. Ann. Section 49-73a et seq.

"6. On May 11, 1981 the Tax Collector's Office informed the Deputy Town Clerk, Rose M. Blesso, of delinquent taxes on the property at 963 Capitol Avenue.

"7. On May 11, 1981 the Tax Collector's Office filed certificates of lien on the land records of the City of Hartford for the delinquent taxes for the 1979 and 1980 assessment for the property at 963 Capitol Avenue.

"8. Liens securing unpaid taxes for the 1977 and 1978 assessments on 963 Capitol Avenue had been recorded on the land records of the City of Hartford on June 29, 1979 and June 30, 1980 respectively.

"9. On December 21, 1981 the defendant, Connecticut Insurance Placement Facility, paid the City of Hartford Five Thousand Six Hundred and thirty-eight Dollars and sixty-five cents ($5,638.65) as insurance proceeds from a fire loss occurring at 963 Capitol Avenue, Hartford, Connecticut.

"10. The payment of this sum reduced the tax indebtedness of the owner of the property located at 963 Capitol Avenue by $5,638.65.

"11. A receipt of payment of this sum is attached hereto.

"12. The taxes due on the property at 963 Capitol Avenue on May 11, 1981 were broken down as follows: $22,967.46 principal, $3,714.94 interest and $45.00 lien fees. (See attached hereto Taxes Due to the City of Hartford).

Respectfully submitted,

/s/ Thomas Sataro

Tax Collector for the City of Hartford

Filed March 15, 1982."

[8] "AFFIDAVIT OF ROSE M. BLESSO

"The undersigned, Rose M. Blesso, being duly sworn, says:

"1. I am Rose M. Blesso of 69 Chester Street, Hartford, Connecticut.

"2. I believe in the requirements of an oath.

"3. I am over the age of eighteen (18).

"4. I am the Deputy Town Clerk of the City of Hartford.

"5. As Deputy Town Clerk, it is one of my duties to respond to inquiries from insurance companies as to whether delinquent taxes exist on proper-

on May 8, 1981, the defendant notified the city of Hartford of its intention to pay fire losses on the Capitol Avenue property. Sataro reported that on May 11, 1981, the tax collector's office informed Blesso of delinquent taxes on the subject property and that on the same date the tax collector's office filed a certificate of lien on the land records of the city of Hartford for the delinquent taxes for the 1979 and 1980 assessment for this property. Blesso asserted that on May 28, 1981, the city of Hartford notified the defendant by registered mail of the existence of delinquent taxes on the Capitol Avenue property.

An insurance company may pay fire loss proceeds directly to a municipality without liability to the insured provided that it gives the municipality notice of a payable fire loss claim, demands from the municipality a statement of outstanding tax liens filed pursuant to § 49-73a and the municipality delivers such a statement to the company within the twenty day period specified by statute.

---

ties located in the City of Hartford. These inquiries are made prior to the payment of fire insurance proceeds pursuant to Conn. Gen. Stat. Ann. § 49-79a et seq.

"6. On May 8, 1981 the defendant, Connecticut Insurance Placement Facility, notified the City of Hartford of its intention to pay fire insurance proceeds to the owners of 963 Capitol Avenue, Hartford, Connecticut.

"7. On May 28, 1981 the City of Hartford notified the defendant by registered mail of the existence of delinquent taxes on the property 963 Capitol Avenue, Hartford, Connecticut. Said notice is attached hereto.

"8. The delinquent taxes on the property 963 Capitol Avenue were in the amount of $26,727.40.

"9. Said delinquent taxes were duly recorded in the land records of the City of Hartford.

"10. On May 11, 1981 certificates of tax liens for the assessment lists of 1979 and 1980 on the property 963 Capitol Avenue were filed upon the land records of the City of Hartford.

Respectfully submitted,

/s/ Rose M. Blesso

Deputy Town Clerk of the City of Hartford

Filed March 15, 1982."

The deputy town clerk received the notice from the defendant on May 8, 1981. On May 28, 1981, by either certified or registered mail,[9] the clerk sent to the defendant a letter containing information with respect to outstanding tax liens on the Capitol Avenue property. Section 49-73d provides that the statement of the town clerk shall be "delivered" to the insurance company "in person or by registered or certified mail, within twenty days from the date of receipt by the town clerk of such demand." Excluding May 8, the date of the receipt of the "demand"; *Austin, Nicholas & Co.* v. *Gilman,* 100 Conn. 81, 83, 123 A. 32 (1923); if mailing constitutes delivery within the meaning of the statute, then the statute was satisfied in this respect.

"The word 'deliver' includes a handing over for the purpose of taking even though both acts do not occur simultaneously. *State* v. *Koenig,* 120 Conn. 39, 43 [178 A. 923 (1935)]." *Zarillo* v. *Peck,* 33 Conn. Sup. 676, 678, 366 A.2d 1165, cert. denied, 171 Conn. 731, 357 A.2d 515 (1976). When a statute, such as section 49-73d, authorizes delivery by mail then depositing a letter with the post office in the specified manner and within the specified time period constitutes delivery to the defendant. See id., 679.

The record is, however, barren of the requisite demand and statement. The Anderson affidavit contains no reference to any demand whatsoever, let alone the demand required by § 49-73d. The Blesso affidavit refers generally to her duty to answer inquiries concerning delinquent taxes made prior to the payment of fire insurance proceeds but makes no reference to a specific inquiry by the defendant with respect to liens against fire loss proceeds. Accompanying the affida-

---

[9] The Blesso affidavit asserts that the letter was sent by registered mail. The copy of the letter in the court file contains the notation "5/28/81 Certified 788073." Since the statute contemplates either registered or certified mail, this discrepancy is immaterial.

vit is a letter from Blesso to the defendant. This letter recites that in compliance with Public Acts 1979, No. 79-342 and Public Acts 1980, No. 80–207 (General Statutes §§ 49-73a to 49-73i) she has searched her records "for tax liens in existence" and is "enclosing them with this letter." Attached to the letter is a list of tax liens for the assessment lists of 1977 through 1980. Neither the letter nor the accompanying list make any express reference to the requirement of § 12-173 (5) for inclusion in the lien certificate of a statement regarding the intention to file a lien against the fire loss proceeds. Whether a reasonably prudent insurer would have construed this communication of the town clerk and the enclosed list of liens to include only those for which the certificate complied fully with § 12-173, including the notice concerning fire loss proceeds, presents an issue of fact for the trier to be determined from all the surrounding circumstances. One significant circumstance would be the content of the notice and demand which the defendant claims to have given to the town clerk in conformity with § 49-73d (a) but which has been omitted from the material presented with the motion for summary judgment as well as from the record on appeal. The information contained in the Blesso letter does not indicate so unequivocally that the tax liens listed were filed in conformity with § 12-173 that it can be said as a matter of law that the defendant was entitled to make that assumption and thus receive the protection afforded by § 49-73g to an insurer which has reasonably relied "upon information contained in any statement provided by a municipality pursuant to section 49-73d." Where reasonableness of conduct is an issue it is only under exceptional circumstances that the question can be resolved without a trial. The Sataro affidavit simply states that he informed Blesso of delinquent taxes on the subject property. Thus, what can be gleaned from the several documents is that the defendant notified the city of its intention to pay fire insur-

ance proceeds to the insured, was advised by city officials of the amount of tax liens on the insured's property and thereupon paid the proceeds to the city.

Practice Book § 384 provides that a summary judgment may be rendered for a moving party "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If the trial court grants a motion for summary judgment in the mistaken belief that the factual predicate for that judgment is present, such action is clearly erroneous. *Mizla* v. *Depalo,* 183 Conn. 59, 63, 438 A.2d 820 (1981).

It is not enough for the insurance company to request the amount of outstanding tax liens. It must specifically request the amount of liens filed pursuant to § 49-73a, that is, liens involving a claim against fire loss proceeds. Although the company is not required to examine the land records to ascertain whether the municipality has in fact complied with the statute, its reliance on the town clerk's statement would be reasonable only where that statement construed under all the surrounding circumstances would apprise a reasonably prudent insurer that the tax liens referred to had been filed in accordance with § 12-173. No such demand having been made and no such statement having been delivered, the defendant has not satisfied the statutory predicate for immunity from liability to the insured for fire loss claims under the insurance policy.

There is error, the judgment of the Appellate Session of the Superior Court is set aside and the case is remanded to the Appellate Court[10] for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

[10] Under section 3 (c) of Public Acts 1983, No. 83-29, of the June Special Session of the 1983 General Assembly, jurisdiction of all matters pending in the Appellate Session of the Superior Court was transferred to the Appellate Court.