DENISE MASKO *v*. TOWN OF WALLINGFORD ET AL.
(AC 21031)

Landau, Mihalakos and Freedman, Js.

Argued September 14—officially released December 11, 2001

*J. Sarah Posner*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant second injury fund).

*David J. Weil*, with whom, on the brief, were *Frederick L. Murolo* and *Jane M. Carlozzi*, for the appellee (named defendant).

*Opinion*

FREEDMAN, J. The defendant second injury fund (fund) appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner). The commissioner had found that the renotification to the fund by the defendant town of Wallingford (town) of its intent to pursue the transfer of the plaintiff's case was timely pursuant to Public Acts 1995, No. 95-277, § 3 (e) (P.A. 95-277), codified in 1997 at General

Statutes § 31-349 (e).[1] We agree that the renotification was timely and, accordingly, affirm the decision of the board.

The following facts are relevant to the fund's appeal. The plaintiff, Denise Masko, is the dependent widow of Andrew Masko, who suffered a compensable heart attack on May 10, 1993, during his employment with the town. On May 19, 1994, the town placed the fund on notice of its intent to transfer the claim to the fund pursuant to § 31-349. On Thursday, September 28, 1995, an agent of the town sent a letter, by certified mail, to the fund, renotifying it of the town's intent to transfer the case to the fund. The fund received the September 28, 1995 renotice letter on October 2, 1995.

The primary issue in the fund's appeal is whether the renotice letter, which was mailed on September 28, 1995, and received by the fund on October 2, 1995, was timely under § 31-349 (e).[2] That statute provides that such claims shall be deemed withdrawn "unless the employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer . . . ." We agree with the commissioner and the board that under the circumstances of this case, the notice was timely.

"The second injury fund was established by the legislature in 1945 to encourage employers to hire potential

---

[1] Because General Statutes § 31-349 (e) has not been amended since P.A. 95-277 was enacted, we refer in this opinion to the applicable statute as General Statutes § 31-349 (e).

[2] General Statutes § 31-349 (e) provides: "All claims for transfer of injuries for which the fund has been notified prior to July 1, 1995, shall be deemed withdrawn with prejudice, unless the employer or its insurer notifies the custodian of the fund by certified mail prior to October 1, 1995, of its intention to pursue transfer pursuant to the provisions of this section. No notification fee shall be required for notices submitted pursuant to this subsection. This subsection shall not apply to notices submitted prior to July 1, 1995, in response to the custodian's request, issued on March 15, 1995, for voluntary resubmission of notices."

employees with preexisting disabilities or injuries. To provide an economic incentive for such employment, the second injury fund provided resources to limit the direct exposure of employers and their insurers to 104 weeks of workers' compensation payments for injuries exacerbated by the employee's preexisting condition. . . .

"In 1995, a blue ribbon commission, which included both government and industry representatives, reported to the legislature that the second injury fund had not been managed properly and faced substantial unfunded claims for payment. Witnesses testifying at a legislative committee hearing and on the floor of the legislature noted the fact that the problem of employment for the disabled had been attenuated by the enactment of federal and state antidiscrimination statutes.

"Concluding that the second injury fund had outlived its usefulness, the legislature adopted P.A. 95-277 to revise § 31-349 in two significant respects. First, the legislature enacted § 31-349 (d), which closes the fund to any transfer of claims for injuries occurring after July 1, 1995. Second, in order to permit a determination of potential fund liability for prior injuries, the legislature enacted § 31-349 (e), which requires re-notification to the fund by October 1, 1995, of all claims of which the fund already had notice." (Citations omitted.) *Cece* v. *Felix Industries, Inc.*, 248 Conn. 457, 462–64, 728 A.2d 505 (1999).

The board, in upholding the commissioner's determination that the present notice was timely, acknowledged that it was departing from its own established precedent.[3] The board was persuaded, however, by our

---

[3] The board ruled in favor of the fund on this issue in *Sanders* v. *GAE Services*, No. 3481, CRB-5-96-11 (April 29, 1998), *Wells-Tavalozzi* v. *Bickford's Restaurant*, No. 3736, CRB-6-97-12 (December 22, 1998), and *Raynor* v. *United Technologies Corp.*, No. 3855, CRB-6-98-7 (August 25, 1999).

Supreme Court's decision in *Bittle* v. *Commissioner of Social Services*, 249 Conn. 503, 734 A.2d 551 (1999), a case regarding the timeliness of service of process pursuant to General Statutes § 4-183.

We note initially that "[s]tatutory construction is a question of law and therefore our review is plenary." *Davis* v. *Norwich*, 232 Conn. 311, 317, 654 A.2d 1221 (1995). In *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 503, our Supreme Court construed § 4-183 (c),[4] which requires service of an appeal from the decision of an administrative agency within forty-five days after the mailing of the agency's final decision. The plaintiff, using certified mail, return receipt requested, had mailed the appeal documents forty-four days after the mailing of the agency's decision, and they were received forty-eight days after the mailing of the agency's decision. Id., 504–505. The trial court dismissed the appeal for lack of subject matter jurisdiction because the documents had not been received by the agency until forty-eight days after the mailing of the decision by the agency. Id. This court affirmed the deci-

---

[4] General Statutes (Rev. to 1995) § 4-183 (c) provides: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a copy of the appeal on the agency that rendered the final decision at its office or at the office of the attorney general in Hartford and file the appeal with the clerk of the superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the person appealing resides or, if that person is not a resident of this state, with the clerk of the court for the judicial district of Hartford-New Britain. Within that time, the person appealing shall also serve a copy of the appeal on each party listed in the final decision at the address shown in the decision, provided failure to make such service within forty-five days on parties other than the agency that rendered the final decision shall not deprive the court of jurisdiction over the appeal. Service of the appeal shall be made by (1) United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer, or (2) personal service by a proper officer or indifferent person making service in the same manner as complaints are served in ordinary civil actions."

sion of the trial court, concluding that service under § 4-183 (c) is not completed until the appeal papers are in the actual possession of the administrative agency or the attorney general, whether service is by certified mail or in-hand service. *Bittle* v. *Commissioner of Social Services*, 48 Conn. App. 711, 717, 711 A.2d 1198, rev'd, 249 Conn. 503, 734 A.2d 551 (1999).

The Supreme Court reversed this court's judgment, concluding that "to perfect service pursuant to § 4-183 (c) (1), an appellant needs only to have the appeal postmarked within the forty-five day period." *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 523. In reaching that conclusion, the Supreme Court reviewed the legislative history of § 4-183, stating that "[t]he option to have service made by mail was added to the statute to make appellate procedures simpler by taking advantage of the efficiency, cost-effectiveness and ease of using the mail. If we were to accept the [agency's] position, there would be a degree of unpredictability associated with the use of the mail that would, in practice, unduly complicate the use of the mail option provided by § 4-183 (c) (1), because an appellant cannot effectively predict when the appeal papers actually will be delivered to the agency when the mail service is used. We conclude, therefore, that the legislature's goals of simplifying and making administrative procedures more efficient and equitable to the public, are achieved most effectively when service of process of appeals from administrative agencies is deemed perfected under § 4-183 (c) (1) as of the date it is postmarked." Id., 514–15.

We recognize that the rationale behind P.A. 95-277—to reduce the financial burden on the fund; see *Badolato* v. *New Britain*, 250 Conn. 753, 760, 738 A.2d 618 (1999)—differs dramatically from the policy behind § 4-183 (c) (1). We are persuaded, however, by our Supreme Court's further statements with regard to the inherent

unpredictability of relying on the receipt of mail as the date for perfection of service. Our Supreme Court stated in *Bittle* that "by providing the option of using the United States mail, the legislature did not intend to make the party using the United States Post Office responsible for misdeliveries, nondeliveries or tardy deliveries that may occur, however rare they may be. . . . [N]either an agency nor the public can wield control over the delivery schedules of the post office. The most either can do, when choosing the mail option for delivering documents, is to place those documents in the hands of the post office." *Bittle* v. *Commissioner of Social Services*, supra, 249 Conn. 515–16. "If the date of receipt of appeal documents were to be the date of perfection of service, then appellants could not be certain when the right to make service would terminate, and thus could not effectively plan to preserve their right to appeal. . . . If the date that the service is perfected is set as the date appeal papers are received by the appropriate agency, an appellant's legal rights would be at the mercy of happenstance against which the appellant has no practical defense, except for an educated guess. We are hesitant to leave the public's right to have their claims addressed by the court, as statutorily allowed, to guesswork. Additionally, the actual period of time for every appellant will be different because, in any given case, appeal papers may take three or four days, or even longer, to be delivered by mail, thus undermining uniformity in the applicability of the statute to all appellants." (Citation omitted.) Id., 519–20.

The concern with regard to the use of the mail, as expressed by the court in *Bittle*, is equally applicable to the issue of whether the town's renotice letter in the present case was timely under § 31-349 (e). The court's language is particularly compelling because, unlike § 4-183 (c) (1), which allows for service by mail or personal

service, § 31-349 (e) provides for notification *only* by certified mail. Our conclusion that the town's renotice letter was timely is further supported by *Tucker* v. *Connecticut Ins. Placement Facility*, 192 Conn. 653, 473 A.2d 1210 (1984). In *Tucker*, our Supreme Court construed General Statutes § 49-73d, which requires an insurance company to notify the town clerk, and to demand of the town clerk, in writing, a statement indicating the amount of all liens filed pursuant to General Statutes §§ 49-73a and 49-73b before paying any fire insurance proceeds. The town clerk is then required to deliver to the insurance company, by registered or certified mail, within twenty days of the receipt by the town clerk of the demand, a statement indicating the amount of all such liens.

The court in *Tucker* stated: "Section 49-73d provides that the statement of the town clerk shall be delivered to the insurance company in person or by registered or certified mail, within twenty days from the date of receipt by the town clerk of such demand. . . . The word deliver includes a handing over for the purpose of taking even though both acts do not occur simultaneously. . . . When a statute, such as section 49-73d, authorizes delivery by mail then depositing a letter with the post office in the specified manner and within the specified time period constitutes delivery to the defendant." (Citations omitted; internal quotation marks omitted.) *Tucker* v. *Connecticut Ins. Placement Facility*, supra, 192 Conn. 660.

We conclude, on the basis of the foregoing authorities, that the board properly affirmed the commissioner's decision that the town's renotice letter was timely under § 31-349 (e).[5]

---

[5] The fund's remaining issues involve the delivery of the town's renotice letter. In that regard, the fund claims that the commissioner improperly admitted the town's exhibit twelve into evidence over the fund's objection. Exhibit twelve consisted of the "firm delivery receipts," which, according to one fund employee, were used by the fund to determine the delivery dates of notices pursuant to General Statutes § 31-349 (e). The fund also

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

claims that the commissioner should have corrected paragraph eleven of his award, which stated: "Despite its usual custom, the post office did not deliver the September 28, 1995 letter to the fund on September 29, 1995, nor did it deliver it on September 30, 1995, as the fund did not accept mail on Saturdays." Our conclusion that the town's renotice letter was timely upon mailing makes the resolution of those issues unnecessary.