[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CT Page 463
Each of the underlying actions seeks an interlocutory judgment of interpleader and this memorandum is common to and resolves the issues of both complaints. Each of the parties has agreed to and participated in a stipulation of undisputed facts, and the court has reserved its right to further hearing or hearings in the event it should find the stipulation to be inadequate for purposes of its decision.
High Plains Land Company (hereafter "High Plains") is a Connecticut corporation. Alfred A. Christopher and Alfleta Christopher were the record owners of 17 and 17 1/2 Wood Street in Waterbury. Daniel Perez and Carmen Perez were the record owners of the property located 936-940 North Main Street which is also located in Waterbury. At all relevant times, High Plains was not the record owner of either property, but is and was the mortgagee as appears in the land record. Those mortgage deeds and notes were executed by Alfred A. Christopher and Alfleta Christopher in the amount of sixty-four thousand nine hundred ($64,900) dollars, and Daniel Perez and Carmen Perez in the amount of ninety-two thousand nine hundred ($92,900) dollars, respectively.
First Union National Bank (hereinafter "FUNB") owns the ad valorem real property tax liens assessed against the Wood Street (Christopher) property as evidenced by Certificates of Lien filed in the Waterbury Land Records as follows:
Principal Volume Page List Year
 $604.06 269 512 1990 $604.06 272 591 1991 $604.06 275 543 1992 $645.32 278 554 1993 $629.98 282 24 1994 $629.98 285 202 1995
The City owns water liens assessed against the property as reflected in Certificates of Lien recorded in the Waterbury Land Records as follows:
Principal Date Volume Page
 $644.15 1/29/93 175 269 $902.36 1/31/94 178 580 $945.11 1/31/95 182 393 $704.00 1/31/96 186 171 $704.00 1/31/97 189 570[1]
CT Page 464
FUNB owns the ad valorem tax liens against the North Main Street (Perez) property as evidenced by Certificates of Lien recorded in the Waterbury Land Records as follows:
Principal Volume Page List Year
 $1753.46 274 287 1991 $1753.46 277 191 1992 $1873.28 280 200 1993 $1828.72 283 337 1994 $1828.72 286 468 1995
The water liens assessed against the property are as follows:
Date Amount Volume Page
 1/31/92 $240.98 172 548 1/29/93 $394.43 176 83 1/31/94 $558.65 179 399 1/31/95 $488.54 183 203 1/31/96 $763.85 187 13[2]
On November 26, 1996, High Plains was the owner of a fire insurance policy, number 78837, issued by Scottsdale Insurance Company, insuring the mortgagee's interest in the North Main Street (Perez) property. The City owns a demolition lien assessed against the Perez property dated April 22, 1997 as evidenced by Certificates of Lien recorded in volume 3463 at page 293 of the Waterbury Land Records.
On March 26, 1997, High Plains was also the owner of fire a insurance policy issued by the Scottsdale Insurance Company bearing policy number CFS 067057 insuring the mortgagee's interest in the North Main Street property. Alfred A. Christopher and Alfleta Christopher have no ownership or contract rights in and to the fire insurance policy or its proceeds in the former policy, and Daniel Perez and Carmen Perez have no ownership and/or contract rights in and to the fire insurance policy or its proceeds of the latter policy.
On or about November 26, 1996, the dwelling on the property owned by the Christophers was damaged by fire. On or about March 26, 1997, the Perez dwelling was also damaged by fire. Thereafter, High Plains claimed its outstanding mortgage balance of sixty-two thousand eight hundred sixteen dollars and forty ($62,816.40) cents against the fire insurance policy on the then Christopher property on Wood Street, and it also claimed its outstanding mortgage balance of ninety-five thousand five CT Page 465 hundred thirty-three dollars and seventeen ($95,533.17) cents against the fire policy on the North Main Street property belonging to the Perez's.
High Plains recovered forty-eight thousand ($48,000) dollars from the insurance policy on the Wood Street property, and eighty thousand seven hundred seventy-five ($80,775) dollars from the insurance proceeds applicable to the North Main Street property. FUNB and/or the City claimed priority over the funds received for the delinquent ad valorem real property tax and water USE liens accruing to the date of the fire on the Wood Street property then owned by the Christophers. FUNB and/or the City also claimed priority over the funds received for the delinquent ad valorem real estate tax liens and water USE liens accruing to the date of the fire on the North Main Street property owned by the Perez'. The City also claims a demolition lien subsequent to that fire. High Plains claims that the fire insurance proceeds are free and clear of the claims of FUNB and the City resulting from the casualty losses on the respective properties.
Section 12-64 of the General Statutes requires the tax assessor to set forth the interest for real estate tax purposes in the name of the owner of record. Section 12-161 states that the taxes properly assessed shall become a debt due from the person against whom it is assessed. The real property taxes in issue were not assessed against High Plains. The fire insurance proceeds in issue on both properties are personal property. Section 7-239 of the General Statutes provides that the water USE charges are "to be paid by the owner of each lot or building." Section 7-255
provides that "the owner of property" is liable for the payment of sewerUSE charges which are of no moment in this instance. The City claims a demolition lien under § 49-73b of the General Statutes against the Perez North Main Street property.
Section 49-73b (c) provides that within thirty (30) days after the § 49-73b work has ceased, the municipality must file a certificate of lien and give notice in accordance with § 49-34. Section 49-73b (a) provides a municipality the right of recovery for, inter alia, the demolition of any real estate from the owner of the real estate for which said expenses were incurred. The demolition lien certificate was not served on High Plains. The letter from the City of Waterbury to Scottsdale Insurance Company dated April 5, 1997 was not intended as notice pursuant to General Statutes § 49-73a. The City neither recorded a lis pendens against the property nor brought an action to foreclose the demolition lien within one year of the recordation of said lien. The demolition of the property was required due to the damage sustained in the fire of March 27, 1997, and the City incurred expenses of nineteen thousand two hundred seventy-five ($19,275) dollars for the demolition of the property which commenced on March 27, 1997 and was CT Page 466 completed on April 8, 1997.
The issue presented in these cases is whether the proceeds from two insurance policies, purchased and owned by the mortgagee, are subject to the liens of the City of Waterbury and the First Union National Bank, respectively, for demolition expenses, real estate taxes, or water USE
taxes.
 THE DEMOLITION LIEN
The demolition lien arises out of the fire loss on the Perez property at 936-940 on North Main Street in Waterbury. Demolition of the property was required, as a result of that damage, to secure the real estate or make it safe, and the City incurred nineteen thousand two hundred seventy-five ($19,275) dollars for that demolition. It was begun on March 27, 1997 and completed on April 8, 1997.
The City draws upon § 49-73b of the General Statutes in support of its position that it does indeed have a demolition lien on that property to secure such real estate or to make it safe.[3] That statutory subsection (a) provides that the City shall have a right to recover such expenses from the owner of the real estate. Subsection (b) of the cited statute states that the interest of each person in such real estate shall be subject to the lien for the payment of such expenses, which lien shall take precedence over any other encumbrances except municipal tax assessments on such real estate. That subsection continues on setting forth time limits on which the lien to be valid must be filed after the work has ceased. Subsection (c) recites that the interest of each person and the proceeds of any policy providing insurance coverage issued by an insurance company for a loss to a covered residential or commercial structure including any policy written pursuant to § 38a-70 shall be subject to a lien on such proceeds for expenses incurred by the municipality pursuant to provisions of subsection (a) of this section. It concludes by restating the time and notice requirements of subsection (b).
Section 49-73d requires the insurance company to notify the town clerk before paying any fire insurance proceeds; to demand in writing a statement indicating the amount of all liens filed pursuant to §49-73a; and § 49-73b requires the town clerk to give notice in its certificate of lien of its intention to claim against the fire insurance proceeds. The statement must be delivered to the insurance company in person, by registered or certified mail within twenty (20) days from the date of receipt by the town clerk of the insurance company's demand. The insurance company "may rely conclusively upon the amount of the taxes or expenses due as set forth in such notice of lien in making any payments CT Page 467 of proceeds to any person."[4] Section 49-73d (a); Tucker v. ConnecticutInsurance Placement Facility, 192 Conn. 653, 655-57. Demolition as previously set forth was completed on April 8, 1997, and the City filed a certificate of lien April 22, 1997. The owners of the property, Daniel and Carmen Perez, were served with notice of lien in accordance with § 49-73b.[5]
High Plains was not served with notice of the demolition lien. However, this is totally irrelevant as § 49-73c provides the filing of such certificate of lien shall constitute constructive notice of the existence of the lien and the claim of the municipality against any such interest in such item of real estate or in such proceeds of the insurance policy. It also constitutes constructive notice to any person having an insurable interest in the real estate or an interest in the proceeds. Clearly, the notice was timely, and the failure to serve High Plains is of no import or significance.
While the foregoing aspects of the notice requirement have not been challenged, High Plains does, nevertheless, challenge other elements of the notice provisions. While certainly not the stronger of the two attacks upon notice, it claims a violation of the time limitation set forth in § 49-39 by analogizing it to mechanic's liens. However, it ignores subsection (f) of § 49-73b which recites that any municipal lien filed pursuant to that section may be discharged or resolved in any manner provided in §§ 49-35a to 49-37 inclusive. The reference in § 49-73b (f) to the mechanic's lien statutes which deal specifically with the procedure for discharge or dissolution liens filed thereunder, does not include § 49-39 which specifies the time limitation covering the life of mechanic's liens. Had the legislature intended to make demolition liens subject to the time limitations of mechanic's liens, it would have done so with the same specificity as it did with reference to dissolution procedures. The intent of the legislature is to be found not in what the legislature meant to say, but in the meaning of what it did say. Burham v. Administrator, 184 Conn. 317, 325 (1987).
High Plains continues its assault on the validity of the lien by citing to § 49-73a. It does not challenge the fact that the tax collector made and filed in the office of the town clerk a certificate of lien pursuant to § 12-173, but does challenge the fact it considers the requisites of § 12-173 not to have been satisfied. Section 12-173, specifically, the certificate to be filed thereunder, states that the following information must be set forth:
(1) the name of the person against whom such tax appears in the rate bill; CT Page 468
(2) the description of such real estate;
(3) the principal of such tax due thereon, the amount of which, with interest, if any, and fees and other charges, is secured by such lien;
(4) the date or dates when the principal of such tax became due; and,
(5) a statement giving notice of his intention to file a lien pursuant to §§ 12-172 and 49-73a to 49-73i inclusive of any policy of insurance providing coverage for loss or damage caused by fire if a loss or damage has occurred. This attack on the validity of the demolition lien cannot be seriously considered. It is without merit as to that specific lien.[6]
Both the City and FUNB rely heavily upon §§ 49-73a and 49-73b, respectively. Each relies on these statutes as authority for their proposition that insurance proceeds are recoverable for ad valorem taxes on real estate and water USE. Subsection (a) of § 49-73 thereof authorizes the municipality to be reimbursed for expenses incurred in the inspection, repair, demolition, removal or other disposition of any real estate in order to secure such real estate or to make it safe, and states that it shall have the right to recover such expenses from the OWNER of the real estate. Subsection (b) recites that the INTEREST of each person in such real estate shall be subject to a lien for the payment of such expenses, which lien shall take precedence over any other encumbrance except municipal tax assessments on such real estate. Subsection (c) provides that the interest of each person and the PROCEEDS of any policy providing insurance coverage issued by an insurance company for a loss to a covered residential or commercial structure including any policy written pursuant to the provisions of certain statutes shall be subject to a lien on such proceeds for the expenses incurred by the municipality. It cannot be seriously disputed that the statute provides the right to recover against an owner, against the interest of any person in such real estate, and against the proceeds of any policy providing insurance. Any entity attempting to prevail against such statute has an enormous if not insurmountable burden to overcome.
High Plains attempts to meet this burden by positing the argument that the proceeds of the fire insurance policy are personal property and that the liens cannot attach the proceeds of a mortgagee policy for a debt owed by the owner of the property. The lien rights granted to the municipality in accordance with § 49-73a et seq., are not intended to alter or limit the right of a municipality to acquire and enforce rights against real property, "but shall be in addition to any other right provided by law to acquire and enforce such right." Section 49-73i of the General Statutes. "[I]t is axiomatic the process of statutory interpretation involves a reasoned search for the intention of the CT Page 469 legislature. In re Valerie D., 223 Conn. 492, 512, 613 A.2d 748 (1992);Lauer v. Zoning Commission, 220 Conn. 455, 459-60, 600 A.2d 310 (1991). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and its relationship to existing legislation common law principles governing the same general subject matter." Ambroise v. William Raveis RealEstate, Inc., 226 Conn. 757, 764, 628 A.2d 1303 (1993). "The intent of the legislature, as this court has repeatedly observed, is to be found not on what the legislature meant to say, but in the meaning of what it did say. Frazier v. Manson, 176 Conn. 638, 642, 410 A.2d 475 (1979);Kulis v. Moll, 172 Conn. 104, 110, 374 A.2d 133 (1976); Colli v. RealEstate Commission, 169 Conn. 445, 452, 364 A.2d 167 (1975); UnitedAircraft Corporation v. Fusari, 163 Conn. 401, 410-11, 311 A.2d 65
(1972). Where there is no ambiguity in the legislative commandment, this court cannot, in the interest of public policy, engraft amendments onto the statutory language." Burnham v. Administrator, 184 Conn. 317, 325
(1981).
The parties have stipulated that FUNB owns the ad valorem real property tax liens on the property as evidenced by Certificates of Lien recorded in the Waterbury Land Records. The priority of such liens set forth in § 49-73a of the General Statutes is unmistakable and unavoidable. This court is convinced and rules that claims for tax liens filed by FUNB are superior to and take priority over the proceeds of the insurance policies held by High Plains.
The City relies upon § 49-73b of the General Statutes in order to claim priority of its demolition lien over High Plains as mortgagee. Subsection (a) specifies the basis for such superiority or priority of those claiming thereunder. Under subsection (a) the language that "[a]ny municipality which has INCURRED EXPENSES FOR THE INSPECTION. REPAIR.DEMOLITION. REMOVAL, OR OTHER DISPOSITION OF ANY OTHER REAL ESTATE INORDER TO SECURE SUCH REAL ESTATE OR TO MAKE IT SAFE. . . ." (emphasis added), are words which limit its application. The arguments which utilize the statutory language PERSONS, PROCEEDS AND POLICY are sufficient to permit the City to prevail on its § 49-73b claim for its demolition expenses.
High Plains recognizes its burden against §§ 49-73a and 49-73b of the General Statutes. It would attempt to overcome that burden or satisfy it as the case may be by asserting that the cited section violates Article 1, § 8 and § 11 of the Connecticut Constitution and theFourteenth Amendment of the United States Constitution as it applies to High Plains under the circumstances of this case. This is essentially a due process of law argument. A party challenging the constitutionality of CT Page 470 a validly enacted statute bears a heavy burden of proving its unconstitutionality beyond a reasonable doubt. State v. Breton,212 Conn. 258, 269 (1989); Zapata v. Burns, 207 Conn. 496, 507-08
(1988); Ramos v. Town of Vernon, 254 Conn. 799, 814 (2000). All legislative enactments carry with them a strong presumption of constitutionality, and a party challenging constitutionality of a validly enacted statute bears a heavy burden of proving it unconstitutional beyond a reasonable doubt. Beccia v. Waterbury, 192 Conn. 127, 133
(1984); Chotkowski v. State, 240 Conn. 246, 257-58 (1997).
If a tax is imposed which is in effect and purpose a denial to one of the enjoyment of rights indicated in the Constitution and the enjoyment of which it secures equally to all, or is a seizure of property of one for the benefit of the another, or is an uncompensated confiscation of property, the law authorizes such exaction is in violation of mandates contained in our Constitution and probably in all American constitutions and is therefore void. State v. Travelers Ins. Co., 73 Conn. 255,265-66; Montgomery v. Branford, 109 Conn. 388, 393. After even a perfunctory reading of Montgomery, a distinction is immediately evident. When one adds to the effect of nullifying the Special Acts of the legislature which attempted to validate certain actions taken by the Town of Branford that year and the previous year it becomes clear that the challenged statute favors no class and is simply an enumeration of certain rights accorded to municipalities by the legislature. The factual precedent for a finding in favor of High Plains on this challenge falls far short of meeting its burden of proof of unconstitutionality. The City may recover its demolition expenses against the insurance proceeds.
 MUNICIPAL WATER LIENS
Section 7-239 uses the language equitable rates or charges for the use of the waterworks system. It also refers to the owner of each lot or building which is connected to and uses such system. It continues by reciting that the rates or charges so established for any class of users or property served shall be extended to cover any additional premises thereafter served which are within the same class. Subsection (b) provides that the rates or charges established pursuant to that section if not paid when due shall constitute a lien upon the premises served and a charge against the owners thereof. A lien described in that section shall take precedence over all other liens or encumbrances except taxes and may be foreclosed against the lot or building served in the same manner as a lien for taxes. The legislature appears to distinguish between tax liens and use charges which may be accorded the status of a lien but never referred to as a tax in any of the statutes that apply. This leads to the inescapable conclusion that a use or rate charge prioritized to the status of a tax lien does not convert such water use charges or rates to CT Page 471 tax liens. Priority over inferior claims does not elevate the USES to the status of a tax in the hierarchy of circumstances.
Section 49-73a specifically refers to proceeds of any policy providing fire insurance coverage for loss or damages caused by fire on an item of real estate being subject to a tax lien on such real estate. To equate water use charges or rates to the words of limitation and purpose defined by § 49-73a defies law and logic and constitutes a quantum leap to a classic non sequitur. The City cannot avail itself of that section as claimed for its water use or rate charges as manifested by its Certificates of Lien, and be entitled to the proceeds of the policy purchased by and owned by the mortgagee in this instance.
 MUNICIPAL TAX LIENS
Section 12-171 specifies the "owner" "or owners" of real estate. Section 12-172 refers to the interest of each person and each item of the real estate which has been legally set in his assessment list that would be subject to a lien for that part of his taxes. Section 12-173 discusses continuing any tax lien existing against any item of real estate to secure the payment of the tax assessed by such municipality. These statutes refer to the owner and/or the interest of each person in the real estate.
Section 49-73e refers to liens filed under 49-73a and 49-73b and it recites that liens filed pursuant to those sections shall take precedence over any claim of right of an insured owner, mortgagee, assignee or other interested parties except as provided in § 49-73b. It goes on to say that a lien filed under § 49-73a shall take precedence over the lien filed under § 49-73b. This creates a priority for tax liens over a demolition lien in general.
Tax liens take priority under § 49-73a, but clearly do not fall within the purview of § 49-73b. This is of no moment under these circumstances. They, therefore, do enjoy the statutory advantage created by the former statute. The claims for municipal taxes due the City of Waterbury (FUNB) are deemed payable from the subject insurance proceeds.
Judgment may enter for FUNB on its claim for real estate taxes; for High Plains on the City's claim for water use charges; and for the City on its claim for demolition expenses.
Moraghan, J.T.R.
Exhibit 1
Sec. 49-73b. Municipalities authorized to recover expenses. Liens on real estate and fire insurance proceeds.
 (a) Any municipality which has incurred expenses for the inspection, repair, demolition, removal or other disposition of any real estate in order to secure such real estate or to make it safe shall have the right to recover such expenses from the owner of the real estate for which such expenses were incurred.
 (b) The interest of each person in such real estate shall be subject to a lien for the payment of such expenses, which lien shall take precedence over any other encumbrance except municipal tax assessments on such real estate. No such lien shall be valid, unless the municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to the owner of the real estate in the same manner as provided in section 49-34.
 (c) The interest of each person in the proceeds of any CT Page 473 policy providing insurance coverage issued by an insurance company for a loss to a covered residential or commercial structure, including any policy written pursuant to the provisions of section 38a-670, shall be subject to a lien on such proceeds for the expenses incurred by a municipality pursuant to the provisions of subsection (a) of this section, provided such municipality, within thirty days after such work has ceased, files a certificate of such lien and gives notice to such interested person in the same manner as provided in section 49-34.
 (d) Any municipal lien filed pursuant to the provisions of this section may be foreclosed in the same manner as a mortgage.
 (e) Any certificate of lien filed pursuant to this section shall exist from the fifteenth day succeeding the date of entry of such certificate in the land records.
 (f) Any municipal lien filed pursuant to this section may be discharged or dissolved in the manner provided in sections 49-35a to 49-37, inclusive.
 (g) Nothing in this section shall prevent an insured owner, mortgagee, assignee or other interested party from negotiating a dissolution of any such lien on the insurance proceeds, enabling the insurance company to disburse said proceeds.
 (h) The provisions of this section shall not apply to policies on single-family or two-family dwellings.